**Herbert F. STEIGLER, Appellant,**

**v.**

**Raymond W. ANDERSON, Warden, Delaware Correctional Institution,
Appellee.**

**No. 73-1720.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 9, 1974.

Decided April 18, 1974.

794

William E. Taylor, Jr., Henry A. Heiman, Steven R. Karlsen, Wilmington, Del., for appellant.

Jerome O. Herlihy, Chief Deputy Atty. Gen., Richard R. Wier, Jr., State Prosecutor, Wilmington, Del., for appellee.

Before ADAMS, HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Appellant Herbert F. Steigler was convicted in the Superior Court of Delaware on three counts of first degree murder and one count of assault with intent to commit murder in connection with a fire in the home of appellant on October 19, 1968. On appeal, the Delaware Supreme Court affirmed the conviction. Steigler v. State, 277 A.2d 662 (1971). Appellant filed a petition for a writ of certiorari, and in a brief order, the Supreme Court vacated appellant's dealth penalty. Steigler v. Delaware, 408 U.S. 939, 92 S.Ct. 2872, 33 L.Ed.2d 760, *citing* Stewart v. Massachusetts, 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972). Proceeding *in forma pauperis*, appellant petitioned the United States District Court for the District of Delaware for a writ of habeas corpus. The district court denied the petition and we affirm, 360 F.Supp. 1286.

In the early morning hours of October 19, 1968, fire erupted at appellant's home in Deerhurst, New Castle County, Delaware. Appellant's wife summoned the aid of a nearby fire company which responded promptly and brought the fire under control, but not before appellant's daughter, mother-in-law and father-in-law had died. During the course of ex-

tinguishing the blaze, attempting to rescue persons trapped in the house, securing the premises and investigating for the causes of the fire, various firemen, including Deputy Fire Marshall Richard Lynch, discovered several items of physical evidence of arson. Openly situated throughout the house were numerous glass containers, some broken and some filled with gasoline. Sections of the rug upon which several of the containers had been placed were soaked with gasoline. Surmising from this and other evidence that the fire was the result of arson, and having assisted in removing at least one corpse, Lynch placed a call to the New Castle County Fireboard requesting that the Delaware State Police be dispatched to the scene. Shortly thereafter Sgt. Daniel Bramble of the Delaware State Police and several of his colleagues arrived and, without a warrant, proceeded to remove the physical evidence of arson discovered by Lynch and the various firemen. The police also took pictures of some of this evidence and the surrounding area from which they were removed. These photos and physical evidence were admitted into evidence at trial over appellant's objection. Appellant contends that since the police did not obtain a search warrant, his rights under the fourth amendment were violated and hence the evidence in question was inadmissible.

Sgt. Bramble of the Delaware State Police interviewed appellant on four separate occasions between October 19 (morning of the fire) and October 24, before charging him with arson and murder. On none of these occasions was appellant informed of his *Miranda* rights, which appellant contends violated his fifth amendment rights.

## EVIDENCE SEIZED WITHOUT A SEARCH WARRANT

■ While searches and seizures must generally be undertaken by state officials only after obtaining a search warrant,[1] the Supreme Court has recognized a number of situations in which a warrantless search may be lawful.[2] In each of these situations the Supreme Court found exigent circumstances rendering imperative official action without first obtaining a warrant. We believe a similar situation existed in the present case.

■ Although it is not clear whether appellant concedes this, we think it is beyond question that firemen have a right to enter a premise to suppress a fire without having to obtain a warrant.[3] We simply do not think that a "search" in the fourth amendment sense occurs when firemen enter a burning home to suppress a fire.[4] Moreover, seeking out and rescuing trapped occupants, ventilating the building after the fire is brought under control, searching for any smoldering fires and cleaning up prior to departing all involve proper fire fighting functions which cannot reasonably be viewed as searches under the fourth amendment.

■ In any event, even if such actions of firemen were searches under the fourth amendment, we think no war-

---

1. *E. g.*, Coolidge v. New Hampshire, 403 U.S. 443, 470–471, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Camara v. Municipal Court, 387 U.S. 523, 528–529, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

2. *E. g.*, United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*Cf.* Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971). Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

3. *Accord*, United States v. Gargotto, 476 F.2d 1009 (6th Cir. 1973); United States v. Green, 474 F.2d 1385 (5th Cir. 1973). Although we do not suggest this is a prerequisite to entry by firemen, it is undisputed that Mrs. Steigler, a co-owner of the house, summoned the aid of the firemen.

4. *See* Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971).

rant was required since a more exigent circumstance is difficult to imagine.[5] We think it readily follows from this that any evidence of arson seen by firemen in plain view while performing these functions may be seized without first obtaining a warrant. *See e. g.,* Coolidge v. New Hampshire, 403 U.S. 443, 464–473, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L. Ed.2d 1067 (1968); Ker v. California, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 10 L. Ed.2d 726 (1963).

Not all of the evidence objected to by appellant, however, was seen by the firemen during the course of rescuing trapped occupants, suppressing the fire and securing the premises. Some of the evidence was found while Lynch conducted his investigation into the cause the fire.[6]

▆▆▆ Although Lynch was authorized by statute to investigate "the origin or circumstances"[7] of any fire in Delaware, we recognize this does not necessarily end our inquiry. Regardless of state authority, the acts of state officials are judged by federal standards when fourth amendment violations are claimed. *E. g.,* Elkins v. United States, 364 U.S. 206, 223, 80 S.Ct. 1437, 4 L. Ed.2d 1669 (1960). Thus, even though Lynch had authority under state law to investigate the cause of the fire, the question remains whether the fourth amendment required that he first obtain a search warrant.

Appellant relies heavily on the companion cases of Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), in which the Supreme Court held that the fourth amendment forbids warrantless area inspections for violations of municipal housing and business code provisions. We are not faced, however, with the situation of a fire marshall inspecting a home for violations of fire code provisions. Nor are we faced with the situation (and therefore we express no opinion as to the validity) of a fire marshall investigating, without a warrant, the cause of a fire several hours or days after the fire.[8]

---

5. *See* Camara v. Municipal Court, 387 U.S. at 539, 87 S.Ct. 1727, *citing* North American Cold Storage Co. v. City of Chicago, 211 U. S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (seizure of unwholesome food); Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (compulsory smallpox vaccination). Compagnie Francaise v. Board of Health, 186 U.S. 380, 22 S.Ct. 811, 46 L.Ed. 1209 (health quarantine); Kroplin v. Truax, 119 Ohio St. 610, 165 N.E. 498 (summary destruction of Tubercular cattle).

6. Appellant has quite properly not challenged on this appeal the finding of the district court that nothing significant was removed by the police other than what had already been noticed by the various firemen and Lynch. 360 F.Supp. at 1295. A container found by the police in a neighbor's yard was admitted into evidence, but appellant has no standing to raise a fourth amendment claim with respect to that item. *See e. g.,* Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Although it is not entirely clear from the record, the police may have seized three items which had not been previously noticed by the firemen or Lynch. Even assuming arguendo that these items—a container in the garage, a screen through which Mrs. Steigler escaped and four burnt matches—were impermissibly seized without a warrant, their admission into evidence, as implicitly suggested by the district court, was clearly harmless beyond a reasonable doubt.

7. The Delaware Fire Marshal Statute, Del. Code § 6607, provides *inter alia,*
   "(a) The State Fire Marshal, or his Deputy or Deputies, shall enforce all laws and ordinances of the State and the several counties, cities, and political subdivisions thereof having to do with:
   "(5) The suppression of arson.
   . . . The State Fire Marshal, or his Deputy or Deputies, may at any time investigate as to the origin or circumstances of any fire or explosion occurring in the State, and may at all reasonable hours enter any building or premises within his jurisdiction for the purpose of making an inspection or investigation, which, under the provisions of this chapter, he may deem necessary to be made."

8. *See* United States v. Gargotto, 476 F.2d 1009 (6th Cir. 1973) and cases cited therein.

The present situation is markedly different. Here there was an emergency situation which *Camara* explicitly exempted from its warrant requirement.[9] Unlike *Camara*, there was a "compelling urgency [for Lynch] to inspect at a particular time [and] on a particular day."[10] The need to investigate promptly for the cause of the fire is very much interrelated with the necessity of suppressing the blaze. The rationale for dispensing with a warrant in such situations has been cogently summarized by the Fifth Circuit in United States v. Green:

> "Unlike the area inspection, which does not focus on a particular premises and is conducted without reference to knowledge of a fire hazard at a given location, the investigation of an actual fire is logically and factually inseparable from the fireman's job of suppressing the blaze. The ordinary fireman is not an expert in the cause of fires. He cannot determine, after he douses the blaze, whether the danger is past or merely hidden, awaiting only a fresh supply of oxygen to set it off again with perhaps disastrous results.

> "A fire might have been caused by any of a myriad of conditions that would not be terminated by simply putting out the flame—e. g., a faulty appliance, defective or worn out electrial wiring, or careless storage of flammable materials. Where the existence of a gravely dangerous condition has already manifested itself in one fire, it would be the height of folly for the firemen to enter, suppress the flames, and leave the premises without

assurance that they would not be required to return, perhaps within minutes, to do it all again.

> "Critical to the Supreme Court's imposition of the warrant requirement in *Camara* and in *See* was the recognition that there is nothing in the nature of a routine area inspection that requires immediate entry into a particular structure in the area at a specific time. There is, however, such a necessity in the case of a fire. Until someone expert in the cause of fires arrives, inspects the scene, and determines that the fire has been completely extinguished, the firemen cannot reasonably depart. The imposition of a warrant requirement in such circumstances would immobilize the entire apparatus of fire protection. The absurdity of requiring the fire investigator to secure a warrant in order to search for the fire's cause is self evident."[11]

We fully agree,[12] and thus conclude that Lynch's warrantless investigation during and immediately following the suppression of the fire was reasonable and justified by exigent circumstances.[13]

Appellant nonetheless argues that Sgt. Bramble and the other police officers were required to obtain a warrant prior to seizing and removing the containers and other items discovered by Lynch and the other firemen. We do not agree. The purpose of the warrant requirement is to insure prior judicial authorization of intrusions into areas in which a person has a reasonable expectation of privacy.[14] When Lynch proceeded to investigate the cause of the fire he was

9. Camara v. Municipal Court, 387 U.S. at 539, 87 S.Ct. 1727.

10. 387 U.S. at 539, 87 S.Ct. at 1736.

11. 474 F.2d at 1388–1389. *Accord,* United States v. Gargotto, 476 F.2d 1009 (6th Cir. 1973).

12. Additionally, much of the evidence was highly flammable (*e. g.,* containers filled with gasoline and rugs soaked with gasoline) rendering it imperative that they be seized and removed. *Cf.* United States v. Rubin, 474 F.2d 262 (3d Cir. 1973).

13. Appellant raises a question as to the constitutionality of the Delaware Fire Marshal Statute. Note 7 *supra.* In essence, though, his contention is that the statute cannot be constitutionally valid if it authorized Lynch to conduct a warrantless investigation in violation of the fourth amendment. Since we hold that Lynch's action did not violate the fourth amendment, appellant's contention as to the constitutionality of the fire marshal statute must likewise fall.

14. *See* Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

clothed with a law enforcement function similar to police,[15] and correspondingly, his actions were subjected to the restraints of the fourth amendment. But having determined that Lynch's warrantless discovery of evidence of arson was justified and valid under the fourth amendment, we think no greater invasion of privacy resulted when officers from another law enforcement agency (Bramble and the other policemen) subsequently entered and removed the evidence.[16] To require the police in such a situation to first obtain a warrant would be senseless, since it would further no recognizable fourth amendment interest. Appellant no longer had any reasonable expectation of privacy in the items discovered by Lynch during his investigation.[17]

## FAILURE TO GIVE MIRANDA WARNINGS

■ The question of when police are required to give Miranda warnings has been the source of much litigation and, as this Court has noted, must be approached on a case-by-case basis.[18] Miranda created a presumption of coercion whenever a defendant's statement is obtained through interrogation initiated by police after the defendant "has been taken into custody or otherwise deprived of his freedom in any significant way."[19] This presumption of coercion is rebuttable by a showing that the defendant was given Miranda warnings and then waived his right to remain silent.[20] Since appellant was not given Miranda warnings prior to each of the four "interrogations" in question,[21] the statements made by appellant on these occasions are inadmissible as evidence if they were the product of "custodial interrogation."

This Court and other circuits have held that Miranda abandoned the "focus" theory [22] in favor of the more objective test of whether the "government has in some meaningful way imposed restraint on [a person's] freedom of action." [23] In the absence of such restraint there simply does not exist the inherent pressures which Miranda warnings were intended to neutralize.[24]

■ Applying this test of whether there has been significant restraint on freedom of action, the Supreme Court, in Orozco v. Texas, 394 U.S. 324, 89 S. Ct. 1095, 22 L.Ed.2d 311 (1969), erased any doubt that custodial interrogation may occur outside the police station.[25]

15. The Delaware Fire Marshall statute provides that "the State Fire Marshall, or his Deputy . . . shall enforce all laws and ordinances of the State . . . having to do with . . . [t]he suppression of arson." See note 7 *supra*.

16. *Accord* United States v. Green, 474 F.2d 1385 (5th Cir. 1973); *Cf.* United States v. Birrell, 470 F.2d 113 (2nd Cir. 1972).

17. *Cf.* United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

18. *See* United States v. Clark, 425 F.2d 827 (3d Cir. 1970).

19. Miranda v. Arizona, 384 U.S. at 444, 86 S.Ct. at 1612.

20. *See* United States v. Fioravanti, 412 F.2d 407, 413 (3d Cir. 1969).

21. These interviews occurred at various places: a neighbor's home, appellant's cellar, appellant's office and the police station.

22. *See* Escobedo v. Illinois, 378 U.S. 478, 490–492, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

23. United States v. Jaskiewicz, 433 F.2d 415, 419 (3d Cir. 1970). *See e. g.*, United States v. Schmidt, 471 F.2d 385 (3d Cir. 1972); United States v. Clark, 425 F.2d 827 (3d Cir. 1970); United States v. Hall, 421 F.2d 540 (2d Cir. 1969); Virgin Islands v. Berne, 412 F.2d 1055 (3d Cir. 1969); Freije v. United States, 408 F.2d 100 (1st Cir. 1969).

24. *See generally* Kamisar, "Custodial Interrogation" Within the Meaning of Miranda, Criminal Law and the Constitution 335–383 (1968).

25. *Orozco* involved a custodial interrogation in petitioner's home. The Court relied on the fact that the police had conceded that "from the moment he [Orozco] gave his name . . . petitioner was not free to go where he pleased but was 'under arrest'" 394 U.S. at 325, 89 S.Ct. at 1096. *Compare* Virgin Islands v. Berne, 412 F.2d 1055 (3d

Equally beyond doubt is that custodial interrogation does not necessarily ensue merely because police questioning occurred at a police station.[26] (At least two of the police interviews at issue here took place in a police station.) We emphasize, however, that all "station-house" interrogations should be scrutinized with extreme care for any taint of psychological compulsion or intimidation because such pressure is most apt to exist while a defendant is interviewed at a police station.

■ We recognize, of course, what this Court has perceived before: that "[a]n exact definition for 'custodial interrogation' is, by its nature, an impossibility."[27] The Second Circuit, though, has perceptively analyzed the factors which must be considered in determining whether there has been a custodial interrogation:

"Clearly the [Supreme] Court meant that *something* more than official interrogation must be shown. It is hard to suppose that suspicion alone was thought to constitute that something; almost all official interrogation of persons who later become criminal defendants stems from that very source. While the Court's language in *Miranda* was imprecise, doubtless deliberately so, it conveys a flavor of some affirmative action by the authorities other than police interrogation. This view is strengthened by the passage[28] at 384 U.S. 478, 86 S.Ct. 1630, where the Chief Justice, after referring to 'the compelling atmosphere inherent in the process of in-custody interrogation' and just before a second and slightly altered affirmation of the test, inserted a footnote reading:

'46 The distinction and its significance has been aptly described in the opinion of a Scottish court:

'In former times such questioning, if undertaken, would be conducted by police officers visiting the house or place of business of the suspect and there questioning him, probably in the presence of a relation or friend. However convenient the modern practice [of interrogation at the police station] may be, it must normally create a situation very unfavourable to the suspect.' Chalmers v. H. M. Advocate [1954], Sess.Cas. 66, 78 (J. C.).

"Even without the light of *Orozco* we would not have thought this to mean that questioning in the home could never come within the mandate of *Miranda*; we do think it suggests that in the absence of actual arrest something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so. This is not to say that the amount of information possessed by the police, and the consequent acuity of their 'focus,' is irrelevant. The more cause for believing the suspect committed the crime, the greater the tendency to bear down in interrogation and to create the kind of atmosphere of significant restraint that triggers *Miranda,* and *vice versa.*

Cir. 1966) (noncustodial interrogation at appellant's home).

26. *See, e. g.,* United States v. Schmidt, 471 F.2d 385, 387 (3d Cir. 1972) ; United States v. Tobin, 429 F.2d 1261 (8th Cir. 1970) ; United States v. Scully, 415 F.2d 680 (2d Cir. 1969) ; Freije v. United States, 408 F. 2d 100 (1st Cir. 1969). *Cf.* United States v. Knight, 261 F.Supp. 843, 844 (E.D.Pa.1966).

27. United States v. Clark, 425 F.2d 827, 832 (3d Cir. 1970).

28. This view is also strengthened by the Supreme Court's repeated characterizations of the cases before it in *Miranda.* In each an individual was "swept from [his] surroundings into police custody," "thrust into an unfamiliar atmosphere," held "incommunicado" in a "police-dominated atmosphere," "surrounded by antagonistic forces" and "run through menacing police interrogation procedures." Miranda v. Arizona, 384 U.S.. 436, 445–446, 456–457, 461, 86 S.Ct. 1602, 1618, 16 L.Ed.2d 694 (1966).

But this is simply one circumstance, to be weighed with all the others."[29]

With these principles in mind, we have reviewed the record and, after considering appellant's contentions, conclude that the district court committed no error in holding that none of the four interviews in question involved a custodial interrogation. The district court, after thorough consideration of all the facts, found as follows:

"(1) There was a complete absence of restraint of petitioner's liberty; for instance, on October 24th, Bramble spoke with him briefly at his (petitioner's) office;

"(2) The interrogations were routine and courteous in character;

"(3) There is no evidence that the investigation had 'focused' on petitioner. The evidence that police were quietly 'shadowing' the petitioner's family against the possibility of harm at the funeral is significant in that respect. Moreover, other suspects and persons were being interviewed and the physical evidence had not been returned by the F.B.I. Thus, the progress of the investigation was not in any final stage;

"(4) Petitioner was a young and intelligent man, a college graduate and not to be easily cowed or intimidated by police presence;

"(5) The times of the interrogations seemed to be reasonable, subject to petitioner's convenience and not unduly prolonged." 360 F. Supp. at 1291.

In these circumstances, *Miranda* warnings were not required.

Lastly, appellant argues that his conviction was based, at least in part, on perjured police testimony which renders his conviction void. We find no merit in this contention. The district court did not err in finding that appellant had failed to show that perjury had been committed and hence, that he had been deprived of due process.

The order of the district court of July 3, 1973, will be affirmed.

---

29. United States v. Hall, 421 F.2d at 544–545. (Emphasis in original text).