

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-18-1999

# USA v. Leese

Precedential or Non-Precedential:

Docket 98-7513

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"USA v. Leese" (1999). *1999 Decisions*. Paper 134.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/134

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 18, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-7513

UNITED STATES OF AMERICA,

        Appellant,

v.

VICKI S. LEESE,

        Appellee

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. Crim. No. 98-cr-161-1)
(District Judge: Honorable Sylvia H. Rambo, Chief Judge)

ARGUED: February 9, 1999

BEFORE: BECKER, Chief Judge, McKEE, Circuit Judge,
and LEE, District Judge.*

(Filed May 18, 1999)

        David M. Barasch
        United States Attorney
        Theodore B. Smith, III (ARGUED)
        Assistant United States Attorney
        228 Walnut Street
        Harrisburg, PA 17108
        Attorneys for Appellant
_____

*Honorable Donald J. Lee, United States District Court Judge for the
Western District of Pennsylvania, sitting by designation.

James V. Wade, Esquire
Federal Public Defender
Lori J. Ulrich, Esquire (ARGUED)
Assistant Federal Public Defender
Middle District of Pennsylvania
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Attorneys for Appellee

OPINION OF THE COURT

LEE, District Judge.

The United States appeals from an order of September 10, 1998, suppressing a confession of appellee Vicki S. Leese ("Leese") to two postal inspectors from introduction into evidence by the prosecution in her forthcoming trial for misappropriation of postal funds in violation of 18 U.S.C. S 1711. As the historic facts of the case are not in question, we exercise plenary review with respect to the district court's determination as to whether the police conduct found to have occurred constitutes custodial interrogation under all the circumstances of the case. United States v. Benton, 996 F.2d 642, 644 (3d Cir.), cert. denied, 510 U.S. 1016, 114 S. Ct. 613, 126 L.Ed.2d 577 (1993).1 We find that the postal inspectors did not conduct a custodial interrogation or its functional equivalent. Thus, the order of September 10, 1998, will be reversed.

I. Factual Background

The facts of the case, developed at the evidentiary hearing on Leese's motion to suppress, are largely undisputed. On February 17, 1998, Nick Alicea, a United States Postal Inspector, received a report indicating a discrepancy between the issuance of certain money orders and the remittance of the corresponding funds at the Manchester, Pennsylvania Post Office. The next day, February 18, 1998, Inspector Alicea went to the Manchester Post Office and investigated the discrepancies.

_____

1. We have jurisdiction under 18 U.S.C. S 3731 and 28 U.S.C. S 1291.

After reviewing certain financial records of the post office, Postal Inspector Alicea determined that between October 28, 1997 and December 10, 1997, fourteen money order discrepancies existed, all of which were apparently attributable to Leese. Inspector Alicea then decided to interview Leese, who was on duty that day. Before notifying Leese of the desired interview, however, Inspector Alicea contacted another Postal Inspector, Jeffrey Fry, and requested that he come to the Post Office to assist in the interview of Leese. When Inspector Fry arrived, Inspector Alicea requested that the Postmaster, Dennis Hollinger ("Postmaster"), inform Leese that Inspectors Alicea and Fry ("Inspectors") wanted to speak with her in the Postmaster's private office.

The Postmaster accompanied Leese to his office, then departed, closing the door as he exited. The Inspectors introduced themselves and told Leese they needed to ask her some questions. Both Inspectors wore plain clothes and Inspector Alicea wore a visible firearm.[2] Inspector Alicea explained that Leese was not under arrest, that at the conclusion of the interview the Inspectors would be returning to Harrisburg, and that Leese would not be going with them. However, Inspector Alicea did not explicitly state that she was free to leave or stop answering questions at any time.

Inspector Alicea proceeded to question Leese, while Inspector Fry took notes. Initially, the questions related to routine Post Office procedures; thereafter, Inspector Alicea began asking specific questions regarding the discovered discrepancies in Leese's accounts. Leese denied having any knowledge of discrepancies.

Inspector Alicea then inquired of Leese as to whether she had any problems, i.e. financial, drug habit, that had caused her to "borrow" the money. At this point, Leese requested the questioning be stopped until she had an

_____

2. During the evidentiary hearing, there was conflicting testimony as to whether Inspector Alicea's firearm was visible. Leese testified that Inspector Alicea took off his jacket and she saw his holstered firearm. Both inspectors testified that Alicea's firearm was never visible. The District Court found that Inspector Alicea was wearing a visible firearm.

3

opportunity to speak with her union shop steward, Henry Dennis. The interview was temporarily halted until Mr. Dennis arrived, approximately an hour after the interview had been recessed.3 While awaiting Mr. Dennis' arrival, Leese accompanied Inspector Alicea on an audit of her accounts.

Before the interview resumed, Leese met privately with Mr. Dennis.4 Inspector Alicea informed Leese that he was a friend of the prosecutor and that he would inform the prosecutor if Leese cooperated. Shortly thereafter, Leese requested to speak privately with Mr. Dennis again, at which time the Inspectors left the two alone in the Postmaster's office. After five to seven minutes, the Inspectors knocked on the office door, and Mr. Dennis requested that he and Leese be given additional time alone. The Inspectors responded by leaving the two alone for an additional three to five minutes.

When the inspectors returned to the office, Leese confessed that she had taken between $500 and $1,000.5

After hearing the testimony establishing these facts, the district court granted Leese's motion to suppress her confession finding: (i) Leese was summoned to the interview by her supervisor while she was on duty; (ii) the interview

_____

3. Both Leese and Fry testified during the evidentiary hearing that Inspector Alicea attempted to continue questioning Leese after she requested a union representative, but that Inspector Fry stopped him from asking any further questions. Both also testified that once Leese asked for the union shop steward's presence, she did not answer any further questions until the interview resumed with the union shop steward present. App. at 72, 84.

4. Although it is undisputed that Leese and Mr. Dennis met privately, the record is unclear as to the location of the private discussion. The District Court, based on the evidentiary testimony of Alicia, App. at 37, and Leese, App. at 85, found that "[d]efendant conferred briefly with Mr. Dennis before they both went to into (sic) the Postmaster's office with the
Inspectors." Mem. at 3. However, in its brief, appellant states that after Dennis arrived at the post office, "he entered the postmaster's office and spent approximately five to ten minutes alone wih defendant." Appellant's Br. at 8.

5. The audit of Leese's accounts indicated a shortage of $1,995.66.

4

took place in the Postmaster's small, private office; (iii) prior to the interview, Leese was told that she was not under arrest; however, the Inspectors did not explicitly state that she was free to leave or free to refuse to answer their questions; (iv) during the interview, the Inspectors, particularly Inspector Alicea, who was wearing a visible firearm, employed an aggressive and intimidating tone and demeanor; (v) the Inspectors repeatedly accused Leese of taking the money; and (vi) lastly, Inspector Alicea told Leese, several times, that he was friends with the prosecutor and that if Leese cooperated he would let the prosecutor know.

## II. Discussion

The denial of the suppression motion does not warrant elaborate consideration. Since Leese was not given Miranda warnings prior to the interview in question, the statements made by Leese are inadmissible as evidence if they were the product of "custodial interrogation."[6]

Under controlling law, Miranda warnings are required only when a person has been deprived of his or her freedom in some significant way. See Beckwith v. United States, 425 U.S. 341, 96 S. Ct. 1612, 48 L.Ed.2d 1 (1976); Steigler v. Anderson, 496 F.2d 793, 798 (3d Cir.), cert. denied, 419 U.S. 1002, 95 S. Ct. 320, 42 L.Ed.2d 277 (1974). As this Court has noted, "custodial interrogation" is not susceptible of an exact definition; thus, the determination of whether statements are the product of such "custodial interrogation" must be made on a case-by-case basis. Steigler, 496 F.2d at 798; United States v. Clark, 425 F. 2d 827 (3d Cir.), cert. denied, 400 U.S. 820, 91 S. Ct. 38, 27 L.Ed.2d 48 (1970).

In determining whether an individual is in custody, the ultimate inquiry is: "whether there is a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121,

_____

6. Because the parties agree that the inspectors' interview of Leese constituted an "interrogation" for Miranda purposes, our analysis is confined to the issue of whether Leese was in custody when the incriminating statements were made.

5

1125, 103 S. Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (quoting Oregon v. Mathiason, 429 U.S. 492, 495, 97 S. Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam)); Steigler, 496 F.2d at 798 (the objective test is whether the government has in some meaningful way imposed restraint on a person's freedom of action). Where, as here, the individual has not been openly arrested when the statements are made, "something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so." Steigler, 496 F.2d at 799 (quoting United States v. Hall, 421 F.2d 540, 545 (2d Cir. 1969), cert. denied , 397 U.S. 990, 90 S. Ct. 1123, 25 L.Ed.2d 398 (1970)); accord Mathiason, 429 U.S. at 492. It is also established beyond doubt that a custodial interrogation may occur outside the police station. Orozco v. Texas, 394 U.S. 324, 89 S. Ct. 1095, 22 L.Ed.2d 311 (1969).

In making our determination, we are mindful of the Supreme Court's caution that "custody" must not be read too broadly: "[P]olice officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because . . . the questioned person is one whom the police suspect." Mathiason, 429 U.S. at 495, 97 S. Ct. at 714; accord Steigler, 496 F.2d at 799. However, "[t]he more cause for believing the suspect committed the crime, the greater the tendency to bear down in interrogation and to create the kind of atmosphere of significant restraint that triggers Miranda . . . But this is simply one circumstance, to be weighed with all the others." Steigler, 496 F.2d at 799–800 (quoting Hall, 421 F.2d at 545).

Applying these principles to the facts of this case, it is clear that Leese was not in custody at the time she gave her statement in the Postmaster's office. Not only was Leese told that she was not under arrest before the questioning began, but she was specifically informed that when the questioning was concluded the inspectors would be returning to Harrisburg and she would not be going with them.

6

Moreover, each time either Leese or her union shop steward made a request of the inspectors, the request was honored. First, Leese requested the questioning be stopped until she had an opportunity to speak with her union shop steward. The inspectors honored her request, stopping the interview until the union shop steward arrived at the post office. The interview did not resume until after Leese had been given an opportunity to consult privately with the union shop steward.

When Leese requested the questioning be stopped a second time, in order for her to consult privately with the union shop steward, her request was again honored by the inspectors. After five to ten minutes, the inspectors knocked on the door, and when the shop steward requested that he and Leese be given additional time alone, the inspectors complied, leaving them alone for an additional three to five minutes.

The record presented to us is one of postal inspectors conscientiously interviewing a woman, who was under considerable suspicion. A significant portion of the questioning was in the typical police interrogation mode, confirming Leese's knowledge of Post Office procedures, confronting her with the found discrepancies in her accounts, asking her point blank as to whether she committed the crime, challenging her answers, and attempting to discover the details of the crime. There is nothing in the record to suggest that the inspectors would not have departed on request or allowed Leese to do so. Once this point is passed, little remains.

It should be noted that the record does not show that Leese's will was overcome by coercive tactics of the postal inspectors. For instance, Leese admitted only to "borrowing" $500 to $1,000, when in fact the audit of her accounts disclosed a shortage of $1,995.66. Appellant's Br. at 8. Furthermore, although the inspectors requested Leese to provide a written statement, she refused. Cf. Mincey v. Arizona, 437 U.S. 385, 98 S. Ct. 2408, 57 L.Ed.2d 290 (1978) (police repeatedly questioned defendant while in intensive care unit of hospital, encumbered with tubes, needles and breathing apparatus); Davis v. North Carolina, 384 U.S. 737, 86 S. Ct. 1761, 16 L.Ed.2d 895 (1966)

7

(defendant's will was overborne by police authorities who repeatedly interrogated defendant over a period of 16 days); and Reck v. Pate, 367 U.S. 433, 81 S. Ct. 1541, 6 L.Ed.2d 948 (1961) (police deprived defendant of food and sleep.)

Based on our review of the record and being bound by United States Supreme Court precedent, particularly Mathiason, 429 U.S. at 493–94, 97 S. Ct. 713–14, and INS v. Delgado, 466 U.S. 210, 218–20, 104 S. Ct. 1758, 1763–65 (1984), it is our conclusion that, although this is a close case, the manner in which the Inspectors conducted their interview did not rise to a situation where Leese was either in custody or being significantly deprived of her liberty. Mathiason, 429 U.S. 492, 97 S. Ct. 711, 50 L.Ed.2d 714 (1977) (defendant found not to be "in custody" notwithstanding fact that police officer falsely stated that defendant's fingerprints were found at the scene of the crime); Beckwith, 425 U.S. 341, 96 S. Ct. 1612, 48 L.Ed.2d 1 (1976) ("in custody" requirement not satisfied merely because defendant was the focus of the investigation when interviewed). But see Orozco, 394 U.S. 324, 89 S. Ct. 1095, 22 L.Ed.2d 311 (defendant found to be "in custody" when questioned in his bedroom at 4:00 a.m. by four police officers).

III. Conclusion

For the above reasons, we will reverse the September 10, 1998 order of the district court suppressing the confession of Vicki S. Leese.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

8