

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-9-2003

# USA v. May

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2996

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. May" (2003). *2003 Decisions.* Paper 69.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/69

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2996

UNITED STATES OF AMERICA

v.

GREGORY MAY,
                                        Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
D.C. Crim. No. 01-cr-00127
District Judge:  The Honorable William J. Nealon

Submitted Under Third Circuit LAR 34.1(a)
November 19, 2003

Before: RENDELL, BARRY, and CHERTOFF, Circuit Judges

(Opinion Filed: December 8, 2003)

OPINION

BARRY, Circuit Judge

       The parties are familiar with the facts of this case.  As a result, we will provide

only a brief summary of those facts at the outset and will incorporate additional facts as

they are relevant to our discussion of the issues.

On November 12, 2000, Lewis Kunzman ("Kunzman") was discovered dead in a bathroom at the home of Curtis and Donna Williams. According to the autopsy report, the cause of death was "morphine/heroin toxicity." An investigation revealed that appellant, Gregory May ("May"), was with Kunzman when he died, and was an overnight guest in the Williams' house. May had sold the Williamses heroin earlier that evening, and while the Williamses were working the night shift at a manufacturing plant, May invited his friend Kunzman to their house.

Upon returning home, the Williamses (along with their adult child and his girlfriend) found May in one bathroom and Kunzman lying on the floor of their other bathroom, unconscious. Curtis Williams called 911. May was pacing nervously outside the house when the paramedics and police arrived. Pennsylvania State Police Trooper Jeffrey Sredenschek and Bradford County Assistant Deputy Coroner Thomas Carmen entered the house. Trooper Sredenschek saw that Kunzman's face was purple and red; the upper left side of his lip appeared swollen; he had at least two puncture marks on the left inside arm region by the elbow; his right arm was extended, as rigor mortis had set in; his left arm was extended out from his body; and he had what appeared to be two EKG leads on his abdominal area. Carmen's preliminary opinion was that Kunzman had died from the ingestion of a narcotic. Sredenschek knew that May was a drug dealer and saw a syringe on the kitchen counter top.

Sredenschek submitted an affidavit of probable cause and an application for a search warrant to District Magistrate Jonathan Wilcox in Troy Borough, and it was signed. The items sought were described as follows:

> Any and all items that may have contributed to the death of Lewis Wesly Kunzman, DOB: 05/18/67, including but not limited to any illegal narcotic; drug; drug paraphernalia; prescription medication; over the counter medication; bags or bottles containing any drug or narcotic; any weapon, including, but not limited to, any cutting instrument; knife or knives; firearm(s); blunt objects; wires and /or cords; blood; hair; hair fibers; fluids; bodily fluids; clothing; material; chemicals; hardware.

The places to be searched were described as follows:

> Single-story, double wide residential trailer, yellow in color with reddish brown shutters and an attached storage shed located at 162 West South Ave., Canton Twp., Bradford County, PA. Additionally, any and all out buildings/storage sheds including a wooden barn, red in color with gray shingles and white doors and an attached storage shed, green in color with a metal roof; a gray storage shed with a red roof; a brown wooden outbuilding/storage shed; a gray colored storage shed with blue shingled roof and white door; a cinderblock storage shed with white door; a 1984 Pontiac Fiero 2M4, VIN: 1G2AM37R4EP232036, bearing PA registration CAX-6322, white in color; a 1984 Pontiac Fiero 2M$, VIN: 1G2AM37R5EP269371, bearing PA registration BFG-2936, black in color; a Dodge Power Wagon 150, maroon in color.

Upon executing the warrant, troopers found over 100 baggies and items used to ingest heroin; some of the baggies tested positive for heroin residue.

On November 14 and 15, 2000, May called the state police several times, asking to speak to the police about Kunzman's death. On November 15, 2000, Troopers Sredenschek, Kerrick and Shiposh went to May's house. When they arrived, May said: "All right. Here I am. Take me, go ahead and take me." The troopers replied "Greg,

3

we're not here to arrest you. You called us here to speak to you. We're here to talk to you." After May calmed down, the troopers asked, "Can we talk to you?" and May replied, "Yeah, yeah, we can talk."

The troopers were dressed in plain clothes and had weapons that were only visible if their jackets were off. Prior to beginning the interview, the troopers explained to May that he was not under arrest, that he was free to ask the troopers to leave at any time, and that he did not have to answer any of their questions. May said he understood. The troopers did not advise May of his *Miranda* rights at this time.

The troopers interviewed May at his kitchen table. Among other things, May admitted having done drugs with Kunzman on the night Kunzman died. The decision was then made to arrest him for delivery of a controlled substance and, after the arrest, he was advised of his *Miranda* rights.

On April 10, 2001, a federal grand jury returned a two-count indictment, charging May with conspiracy to distribute and possess with intent to distribute heroin and cocaine base, in violation of 21 U.S.C. § 846, and with the distribution of heroin, in violation of 21 U.S.C. § 841(a)(1). May moved to suppress both the evidence retrieved in the search and certain of his statements. Following a hearing, the motion was denied, and May thereafter pleaded guilty to a one-count superceding information charging him with the distribution of heroin and possession with intent to distribute. The plea was conditional, however, with May reserving the right to appeal the District Court's denial of his motion

4

to suppress.

May was sentenced to 132 months imprisonment, and now appeals. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's denial of May's motion to suppress for "clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts." *United States v. Inigo*, 925 F.2d 641, 656 (3d Cir. 1991) (citing *United States v. Mitlo*, 714 F.2d 294, 295-96 (3d Cir. 1983), *cert. denied*, 464 U.S. 1018 (1983)). With respect to whether police conduct constitutes custodial interrogation, our review is plenary. *United States v. Leese*, 176 F.3d 740, 741 (3d Cir. 1999).

## I.

In claiming that the search warrant issued was overly broad and otherwise deficient, May argues (1) the affidavit did not demonstrate probable cause; and (2) the warrant was overbroad. We easily dispose of both arguments through our application of the good faith exception to the exclusionary rule.

Pursuant to *United States v. Leon*, 468 U.S. 897 (1984), unless novel issues are present, reviewing courts may bypass the issue of probable cause and examine whether the executing officers operated in good faith. *United States v. $92,422.57*, 307 F.3d 137, 145 (3d Cir. 2002). This case presents no novel questions of law, and we turn directly to

the officers' good faith.

In *United States v. Hodge*, 246 F.3d 301 (3d Cir. 2001), we stated that the "test for whether the good faith exception applies is whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 307 (quoting *United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999)). We continued: "[t]he mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *Hodge*, 246 F.3d at 307-08 (citing *Leon*, 468 U.S. at 922, and *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993)).

We cautioned, however, that an officer's reliance on a warrant would not be reasonable:

> (1) [when] the magistrate [judge] issued the warrant in reliance on a deliberately or recklessly false affidavit;
> (2) [when] the magistrate [judge] abandoned his judicial role and failed to perform his neutral and detached function;
> (3) [when] the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; or
> (4) [when] the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Hodge*, 246 F.3d at 308 (quoting *Williams*, 3 F.3d at 74 n.4).

May does not claim that Trooper Sredenschek's affidavit was deliberately or recklessly false or that the issuing judge was other than neutral and detached. As to number (3), probable cause must be defined before it can be determined whether or not

the warrant was so "lacking in indicia of probable cause" that an "official belief in its existence [was] entirely unreasonable." In *United States v. Jones*, 994 F.2d 1051 (3d Cir. 1993), we explained the standard to be used when reviewing a probable cause finding by a magistrate as follows: "When faced with a challenge to a magistrate's probable cause determination, a reviewing court must remember that its role is limited. It is not to conduct a *de novo* review. Rather, it simply ensures that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 1055 (citations omitted). In defining probable cause, we noted in *Hodge*, that "[a] magistrate judge may find probable cause when, viewing the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Hodge*, 246 F.3d at 305 (internal quotations omitted).

Here, it was surely not "entirely unreasonable" to believe there was probable cause and that there was a "fair probability that contraband or evidence of a crime [would] be found on the premises." The Magistrate had a "substantial basis" for determining that probable cause existed.

As for number (4), not only must the magistrate have erred, but his error must have been so obvious that a law enforcement official should have realized the mistake just by reading the warrant. Number (4) basically boils down to the Fourth Amendment's requirement that search warrants "particularly" describe: (1) "the place to be searched," and (2) "the persons or things to be seized." *See Maryland v. Garrison*, 480 U.S. 79

(1987).

A warrant particularly describes the place to be searched "if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *United States v. Bedford*, 519 F.2d 50, 655 (3d Cir. 1975) (quoting *Steele v. United States*, 267 U.S. 498, 503 (1925)). Clearly, the warrant in this case particularly described the places to be searched. It stated the type, color, and address of the residence. Other buildings to be searched were similarly described, and vehicle locations, makes, models, years and VIN numbers were provided. As to the description of the items themselves, in *$92,422.57* we upheld a warrant very similar to the one at issue here. We uphold the warrant here.

## II.

May argues that he was in custody when he was interviewed and, because he had not been Mirandized, his statements must be suppressed. We disagree. *Miranda* warnings are only required if a statement was the product of "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* In determining whether a person is "in custody", "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated

8

with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)). This determination is objective, based on "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

An objective, reasonable person in May's position would not have felt restrained to the degree of formal arrest. The interview was conducted at May's request, in familiar surroundings–his home. The police never indicated they would not heed a request to leave; on the contrary, May was told that he was not under arrest and that he could terminate the interview at any time. Moreover, May's freedom of movement, as the District Court found, was not restricted.

## III.

The judgment of sentence will be affirmed.


TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.


Maryanne Trump Barry
Circuit Judge
