

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-30-2004

# USA v. Killingsworth

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1659

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Killingsworth" (2004). *2004 Decisions.* Paper 25.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/25

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 04-1659

UNITED STATES OF AMERICA
Appellant

v.

BENJAMIN KILLINGSWORTH

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Crim. Action No. 03-cr-00110-2)
District Judge:  Hon. Edwin M. Kosik

Argued December 14, 2004

BEFORE:  AMBRO, VAN ANTWERPEN and
STAPLETON, Circuit Judges

(Opinion Filed    December 30, 2004   )

Thomas A. Marino
U.S. Attorney
Theodore B. Smith, III (Argued)
Assistant U.S. Attorney
Office of the U.S. Attorney
Federal Building - 228 Walnut Street
P.O. Box 11754
Harrisburg, PA  17108
 Attorneys for Appellant

Carl J.B. Poveromo (Argued)
Rinaldi, Roscoe & Poveromo
520 Spruce Street
P.O. Box 826
Scranton, PA  18501
  Attorney for Appellee

---

OPINION OF THE COURT

---

STAPLETON, Circuit Judge:

Because we write only for the parties who are familiar with the facts, we do not restate them below.  The United States ("Appellant") appeals the suppression of incriminating statements made by Benjamin Killingsworth ("Appellee") to law enforcement officers during an eight minute interaction at Appellee's home on the morning of January 23, 2003.  The District Court suppressed the statements after determining that they were the product of custodial interrogation conducted without the benefit of *Miranda* warnings.  For the reasons set forth below, we reverse.

I.

In reviewing the District Court's decision to suppress Defendant/Appellee's statements, we review findings of fact for clear error, and exercise plenary review "with respect to the district court's determination as to whether the [law enforcement] conduct found to have occurred constitutes custodial interrogation under all the circumstances of

the case." *United States v. Leese*, 176 F.3d 740, 741 (3d Cir. 1999).

II.

Persons subject to custodial interrogation are entitled to receive information regarding their right to remain silent, their right to speak to an attorney, and their right to have a lawyer appointed to assist them if they are unable to afford a lawyer prior to any questioning. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). Determinations of whether a person was subject to custodial interrogation are made on a case-by-case basis looking objectively at the totality of the circumstances. *Stansbury v. California*, 511 U.S. 318, 323 (1994) (noting that "[t]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned"); *Leese*, 176 F.3d at 743.

A person is in custody where he/she is either formally arrested or where his/her freedom of movement is restricted to the "'degree associated with a formal arrest.'" *Leese*, 176 F.3d at 743 (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal citation omitted)). Where a person has not been arrested, "something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so." *Steigler v. Anderson*, 496 F.2d 793, 799 (3d Cir. 1974). Thus, "[p]olice officers are not required to administer *Miranda* warnings to everyone whom they question." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). Rather, the obligation

to administer *Miranda* warnings exists only "where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Stansbury*, 511 U.S. at 322.

Courts consider a variety of factors when determining if a person was in custody, including: (1) whether the officers told the suspect he/she was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning. *United States v. Czichray*, 378 F.3d 822 (8th Cir. 2004); *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001); *United States v. Crossley*, 224 F.3d 847, 861 (6th Cir. 2000).

Here, the District Court erred in determining that Appellee was in custody during the time the officers were in his home. Examining the totality of the circumstances, the record does not support a finding that Appellee's freedom was restrained to the degree associated with formal arrest. First, the officers made it clear to Appellee that he was not under arrest. Although the record would provide some support for a finding that, prior to entering the house, the officers told Appellee they would arrest him if he did not admit them, once inside and before any questioning, Killingsworth acknowledges that they explicitly informed him that they had come to solicit his cooperation, not to arrest him. The fact that the officers informed Appellee that he would be arrested at some future point for his drug purchases did not transform the conversation into a custodial

interrogation. "It is appropriate for an investigator to advise a suspect of the potential course and consequences of a criminal investigation. Suspects frequently confront difficult decisions about whether to defend against potential criminal charges or to pursue resolutions that may ameliorate certain unpleasant consequences." *Czichray*, 378 F.3d at 829. Although a discussion of future arrest and criminal penalties might indicate a degree of coercion, "some degree of coercion is part and parcel of the interrogation process and [] the coercive aspects of a police interview are largely irrelevant to the custody determination except where a reasonable person would perceive the coercion as restricting his or her freedom to depart." *Id.* Here, a reasonable person would not have understood this level of coercion as restricting his/her ability to terminate the questioning.

Second, the fact that the incident took place in Appellee's home undermines a claim that he was in custody. In *United States v. Czichray*, the Eighth Circuit Court of Appeals noted that "[w]hen a person is questioned 'on his own turf,' we have observed repeatedly that the surroundings were 'not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation.'" 378 F.3d at 826. We agree that "an interrogation in familiar surroundings such as one's home softens the hard aspects of police interrogation and moderates a suspect's sense of being held in custody." *Id.*

Third, the length of the conversation does not indicate a custodial situation. The entire incident took less than ten minutes and included periods of time during which the

Appellee left the room to make a phone call, asked the officers questions and ultimately rejected their proposal that he cooperate. Given that courts have found interrogations lasting anywhere from one and one-half to seven hours to be non-custodial, *see Beckwith v. United States*, 425 U.S. 341, 342-45 (1976) (three hours); *United States v. Wolk*, 337 F.3d 997, 1006-07 (8th Cir. 2003) (an hour and twenty minutes); *Czichray*, 378 F.3d at 825 (seven hours); *Leese*, 176 F.3d at 744-45 (one hour), we are not persuaded that, in the absence of the use of physical force, an actual arrest or some other strong indication of restricted freedom, a reasonably objective person would believe himself to be in custody.

Fourth, the record does not support a finding that the agents used coercive tactics such as a harsh tone of voice, display of weapons or physical restraint during the interrogation. The agents did not physically restrain Appellee and permitted him to leave the room to make a phone call in another area of the house. Although the agents told Appellee not to make the call and repeatedly asked him to end it, such discouragement is not probative of whether the Appellee was free to end his interview entirely. Even assuming that a reasonable person in Appellee's position would have felt he could not make a phone call, "he still retained two viable options: conduct an uninterrupted interview with the agents or terminate the interview. . . . [P]lacing certain ground rules on an interview does not preclude a reasonable person from foregoing the interview altogether." *Czichray*, 378 F.3d at 828.

Finally, we are satisfied that the Appellee voluntarily engaged in the questioning.

After the officers entered Appellee's home, Appellee readily answered questions and asked many of his own. Appellee continued to speak with the agents while he was on the phone with another person. Nothing indicates that the incident involved the type of physical intimidation or psychological coercion which would render Appellee's statements involuntary. *See Arizona v. Fulminate*, 499 U.S. 279 (1999); *Schneckloth v. Bustamente*, 412 U.S. 218, 225 (1972). Additionally, Appellee admits that he never told the agents to leave nor asked to leave himself until he terminated the interview by informing the agents that he did not want to cooperate.[1]

In short, the incident at issue was an attempt by law enforcement agents to further their investigation by soliciting Appellee's aid. As such, the agents suggested to Appellee that there was a benefit to helping them, tried to keep him from communicating their offer to others, and explained the consequences of a decision not to help them. However, the record does not show the use of physical force or restraint, verbal intimidation, the display of weapons, a lengthy interrogation, or other circumstances indicative of a custodial interrogation. Therefore, the District Court erred and we will reverse its decision to suppress Appellee's statements.

---

[1] The District Court's opinion states that Appellee asked the agents to leave. Specifically, the District Court wrote: "we conclude that the agents' intrusion at 8:30 a.m., knowing the defendant was a target, under threat of eventual arrest – excited and experiencing reluctance to converse *while asking that the agents leave* – created a situation tantamount to custody." App. at 5. To the extent that this statement is a factual finding, we find it to be clearly erroneous as it has no record support. *See United States v. Pelullo*, 173 F.3d 131, 135 (3d Cir. 1999).

III.

The District Court's order granting Appellee's motion to suppress will be reversed,

and this matter will be remanded for further proceedings consistent with this opinion.