

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-17-2006

# USA v. Jackson

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2322

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Jackson" (2006). *2006 Decisions*. Paper 1563.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1563

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2322

UNITED STATES OF AMERICA

v.

MAURICE JACKSON,
Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 03-cr-00622)
District Judge: Honorable Stewart Dalzell

Submitted Under Third Circuit LAR 34.1(a)
January 26, 2006

Before: RENDELL, SMITH, <u>Circuit</u> <u>Judges</u>,
and IRENAS*, <u>District</u> <u>Judge</u>.

(Filed:  February 17, 2006)

OPINION OF THE COURT

* Honorable Joseph E. Irenas, Senior District Judge for the District of New Jersey,
   sitting by designation.

RENDELL, *Circuit Judge*.

Maurice Jackson was charged with nine counts of making false statements with respect to the purchase of firearms. After the District Court denied Jackson's motion to suppress a statement that he had made to law enforcement officers, Jackson pleaded guilty but preserved his right to appeal the District Court's ruling pursuant to *United States v. Zudick*, 523 F.2d 848 (3d Cir. 1975).[1] Because we find no merit to Jackson's suppression claim, we will affirm.

As the parties are familiar with the facts, we will provide only a brief summary of them here. The statement in question was taken by officers of the Bureau of Alcohol, Tobacco and Firearms ("ATF")'s Firearms Trafficking Task Force at the ATF's Philadelphia headquarters. As part of a surveillance operation, the officers had observed Jackson making what they believed to be a "straw purchase" of firearms for Tarum Gibbs, the target of a gun trafficking investigation. The officers had followed Jackson and a man whom they thought was Gibbs from the gun store to a West Philadelphia neighborhood. Officers approached Jackson on the street and, after retrieving two guns from the vehicle they had been following, asked him if he would accompany them downtown for an interview. The officers explained that he was not under arrest, but that they wanted to talk to him about his recent firearms purchases in connection with an ongoing federal investigation. Jackson agreed to the interview, and rode in the front seat

---

[1] Jackson did not raise any issues related to his sentence in his brief, and did not respond to our letter notifying him of his right to challenge his sentence under *United States v. Booker*, 125 S. Ct. 738 (2005). The issue is therefore not before us, and we will not address it.

of a police car with one of the officers to the ATF office. He was not handcuffed.

At the ATF office, Jackson was taken to an unlocked interview room and given a Snapple iced tea to drink. A detective read Jackson his *Miranda* rights from a form, which stated that Jackson was not under arrest, was free to leave, and that he had a right to counsel before and during the interview. The detective asked Jackson if he had any questions about the form, and whether he agreed with its content. Jackson signed and dated the form without asking any questions.

Jackson argues that his statement was the product of a custodial interrogation that warranted *Miranda* protections, and that his waiver of those protections was invalid. He is incorrect on both counts.

First, Jackson was not in custody at the ATF office. Because Jackson was not under arrest when he made his statement, we cannot conclude that the interview was "custodial" unless "'something [was] said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so.'" *United States v. Leese*, 176 F.3d 740, 743 (3d Cir. 1999) (quoting *Steigler v. Anderson*, 496 F.2d 793, 798 (3d Cir. 1974)). The District Court, after a careful and comprehensive review of the facts, determined that Jackson was free to leave. We agree. By all accounts, the tone of the interview was cordial and cooperative. Jackson agreed to accompany the agents to the ATF office. He was told that he was not under arrest, and was never restrained or threatened in any way. Although the interview took place at the ATF office, the

interview room remained unlocked, and only one or two officers were in the room with Jackson at any time. Jackson was told that he was free to leave, but he chose to stay. When the interview ended, the officers drove him home. The evidence thus fully supports the District Court's conclusion.

Second, even were we to conclude that Jackson was in custody, he knowingly and voluntarily waived his *Miranda* rights. Jackson's argument that the warnings were invalid because he was not specifically told that he was a suspect in the gun trafficking investigation is without merit. The relevant inquiry is whether Jackson waived his rights "'voluntarily, knowingly, and intelligently,'" *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)), and the evidence demonstrates that he did. Jackson was clearly aware of the context surrounding his interview. Not only did the agents tell him that they wanted to interview him in connection with an ongoing investigation, they also confiscated the guns that he had purchased as evidence. There is no evidence of trickery on the part of the ATF agents, or that Jackson did not understand the warnings as they were administered. We therefore agree with the District Court that Jackson's "statements were the free, uncoerced choice of someone who had knowingly and intelligently waived his rights under *Miranda*; and, indeed, in the larger sense, waived his right against self incrimination."

For the foregoing reasons, we will affirm the judgment of conviction.

_____