

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-19-2000

# United States v. Gomez

Precedential or Non-Precedential:

Docket 99-3979

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. Gomez" (2000). *2000 Decisions.* Paper 254.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/254

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 14, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3979

UNITED STATES OF AMERICA

v.

ANSELMO GOMEZ,
        Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 99-00020)
District Judge: Honorable Alan N. Bloch

Argued October 25, 2000

Before: BARRY, AMBRO, and GREENBERG, Circuit Judges

(Filed: December 14, 2000)

        Harry Litman
        United States Attorney
        Bonnie R. Schlueter
        Assistant United States Attorney
        Thomas J. Farrell
        Assistant United States Attorney
        Paul J. Brysh (argued)
        Assistant United States Attorney
        Office of the United States Attorney
        633 United States Post Office &
        Courthouse
        Pittsburgh, PA 15219

         Attorneys for Appellee

Shelley Stark
Federal Public Defender
W. Penn Hackney (argued)
Assistant Federal Public Defender
Karen Sirianni Gerlach
Assistant Federal Public Defender
Office of the Federal Public Defender
960 Penn Avenue
415 Convention Tower
Pittsburgh, PA 15222

  Attorneys for Appellant

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter comes on before this court on an appeal from a judgment of conviction and sentence entered on November 19, 1999, following the jury's retur n of a verdict against appellant Anselmo Gomez, a physician, on 16 counts of health care fraud arising from Medicare billings in violation of 18 U.S.C. S 1347. The district court sentenced Gomez to concurrent 24-month ter ms of imprisonment on each count to be followed by thr ee years of supervised release. On this appeal Gomez raises the following issues:

> I. The evidence, when viewed in the light most favorable to the Government, was not sufficient to convict Dr. Gomez of health care fraud, because it proved only that his patient care may have fallen below acceptable medical standards, but not that he had any knowledge of, or involvement with, Aquahab's billing procedures.

> II. The Government's evidence that Dr. Gomez failed to adhere to accepted medical practices and standards was irrelevant to the issue of whether he knowingly and willfully participated in fraudulent billings, and also [was] unduly prejudicial, so that it was improperly admitted under Federal Rules of Evidence 402 and 403.

2

III. The district court denied Dr. Gomez his constitutional right to a defense when it refused to allow him to present evidence proving that the general practice of Aquahab was to exclude its doctors from billing matters.

IV. The district court violated Dr. Gomez's fifth amendment right against compelled self-incrimination, when it subpoenaed him to appear before the grand jury; warned him that he must testify truthfully; never told him that what he said might be used against him or that he did not have to answer if he did not want to; and then indicted him based upon his grand jury testimony.

We have reviewed this matter carefully and have concluded that the appeal is clearly without merit and accordingly we will affirm without discussion except on the Fifth Amendment issue that Gomez raises in point IV. Of course, while Gomez complains that the district court violated his Fifth Amendment rights, he actually is referring to the actions of the assistant United States attorney before the grand jury. We exercise plenary review on the Fifth Amendment issue. See United States v. McLaughlin, 126 F.3d 130, 133 (3d Cir. 1997).

The circumstances underlying this point are as follows. This case arises out of a Medicare fraud investigation of Gomez's employer, Three Rivers Physical Therapy and Occupational Therapy Center, which operated the AquaHab program to which Gomez refers in his statement of the issues. Gomez does not claim that he originally was a target or subject of the investigation or the grand jury proceeding and the government at least denies that he was a target. Indeed, Gomez voluntarily cooperated with the investigation, at least to the extent of allowing Medicare fraud investigators to interview him. Nevertheless Gomez was not in the position of a mere witness to the events being investigated, as for example a witness to a robbery, for some of Three Rivers' questioned billings were in his name and to a degree he was involved in its operations.

During the investigation the government served a subpoena on Gomez requiring him to appear before a grand

3

jury in Pittsburgh and he obeyed the subpoena but appeared without counsel. Before the grand jury the following exchange took place between the assistant United States attorney and Gomez:

> Q. Before we get started, I have a few war nings that I have to give to Grand Jury witnesses.

. . .

> Q. First of all, you understand that you're under oath here?
>
> A. (Witness moves head in an affirmative response.)
>
> Q. You have to answer orally, yes or no?
>
> A. Yes.
>
> Q. And you understand that your testimony is being taken down by a court reporter?
>
> A. Yes.
>
> Q. And you understand that it's against the law to lie, to knowingly misrepresent the truth to grand jurors?
>
> A. Yes.
>
> Q. And that would be the crime of perjury or making false statements; do you understand that?
>
> A. Right. Yes.
>
> Q. Do you understand, as well, that if you chose[sic], you could have a lawyer outside the Grand Jury r oom to consult with?
>
> A. Okay. Yes.
>
> Q. And today, did you come here with a lawyer?
>
> A. No. No, I didn't.
>
> Q. Okay. Now, are you willing to answer questions from me and the grand jurors about – –
>
> A. Sure.

App. at 772–73.

Following those warnings Gomez testified at length and

made incriminating statements. Indeed, he contends that

4

"[f]or all practical purposes, the gover nment recognized that it decided to indict [him] based solely upon his grand jury testimony." Br. at 48. While the gover nment does not concede that this statement is true, there is no doubt but that Gomez's testimony was harmful to him.

Prior to the trial Gomez moved to dismiss the indictment by reason of his testimony before the grand jury, contending that the grand jury indicted him "based upon compelled self-incrimination." Id. at 34. In the alternative he asked that the court suppress the use of his testimony at trial. The district court denied these motions and thus the trial went forward with the government using Gomez's grand jury testimony at the trial. As we have indicated, the jury convicted Gomez.

On this appeal, Gomez contends that the procedure followed before the grand jury violated his "Fifth Amendment right to be free from compelled self-incrimination." Id. at 48. He develops his argument as follows. First, he correctly points out that the privilege against self-incrimination applies to a witness before the grand jury. He then argues, again corr ectly, that he was compelled to appear before the grand jury but he incorrectly contends that he was compelled to testify. He bases his argument that he was compelled to testify on the circumstance that the assistant United States attorney "never advised [him] that he did not have to answer any questions, and . . . never told [him] that anything he said could be used against him." Id. at 49. He attempts to overcome the logical problems with his ar gument, which does not take into account that even without a war ning he could have invoked his Fifth Amendment right not to incriminate himself, see United States v. Mandujano, 425 U.S. 564, 581, 96 S.Ct. 1768, 1778 (1976), by ur ging that the government was obliged "to advise [him] that he could remain silent and that anything he said could be used against him . . . ." Br. at 50.

Unfortunately for Gomez, the law does not support his argument. Indeed, he acknowledges that he "understands that by faulting the government for its behavior, he is in effect asking for an extension of the law; there is currently no requirement that a citizen subpoenaed to appear before

5

a grand jury be informed of his right against self-incrimination." Id. He nevertheless asks us to "extend the law" for two reasons. First, he makes the negative argument that Supreme Court precedents do not "foreclose" granting him relief, id. at 51, in this r egard citing United States v. Washington, 431 U.S. 181, 97 S.Ct. 1814 (1977), and Mandujano, 425 U.S. 564, 96 S.Ct. 1768. He then makes the affirmative argument that we should exercise our "supervisory powers" to extend the law to r equire that the government be obliged to advise a witness before a grand jury of his right to remain silent and that his statements can be used against him. Br. at 51.1 The government argues that Gomez is wrong with r espect to existing law as in its view the Supreme Court precedent does foreclose us from granting the relief Gomez seeks, in this regard citing United States v. Williams, 504 U.S. 36, 112 S.Ct. 1735 (1992), Minnesota v. Murphy, 465 U.S. 420, 104 S.Ct. 1136 (1984), and United States v. Wong, 431 U.S. 174, 97 S.Ct. 1823 (1977). Of course, the government also contends that we should not use our supervisory power as Gomez requests.

We are satisfied that the gover nment is correct and thus we hold that the assistant United States attor ney did not have a constitutionally mandated obligation to advise Gomez that he could remain silent and that anything he said could be used against him. See United States v. Crocker, 568 F.2d 1049, 1055–56 (3d Cir. 1977). Moreover, we are convinced that even if we could do so, we should not exercise our supervisory power as Gomez r equests. See Williams, 504 U.S. at 45–50, 112 S.Ct. at 1741–44. In Williams the defendant contended that the Court should affirm the action of the court of appeals in affirming a

_____

1. Gomez does not argue that the United States Attorneys' Manual SS 9–11:150, 9–11:151, which sets forth Department of Justice policy with respect to giving advice to certain grand jury witnesses and with respect to subpoenaing targets of a grand jury investigation, see United States v. Pacheco-Ortiz, 889 F.2d 301, 311–13 (1st Cir. 1989), creates any rights entitling him to relief. Of course, any such contention would be against the weight of judicial authority. See United States v. Myers, 123 F.3d 350, 355–56 (6th Cir. 1997); United States v. Gillespie, 974 F.2d 796, 802 (7th Cir. 1992).

district court order dismissing an indictment because the prosecutor did not disclose substantial exculpatory evidence to the grand jury. The defendant, however, did not contend "that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury." See id. at 45, 112 S.Ct. at 1741. Rather, he urged that the Court should uphold the dismissal on the basis that the court of appeals properly exercised its supervisory power. Id. The Court rejected this argument emphasizing that "[g]iven the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure." Id. at 49-50, 112 S.Ct. at 1743.

We had occasion promptly to consider Williams in the grand jury supervisory power context in Baylson v. Disciplinary Board of the Supreme Court of Pennsylvania, 975 F.2d 102, 110 (3d Cir. 1992). In Baylson, after discussing Williams and other Supreme Court cases, we indicated that Supreme Court precedent "suggest[s] to us that the district court may not under the guise of its supervisory power or its local rule-making power, impose the sort of substantive restraint on the grand jury that is contemplated" by a rule requiring a prosecutor to obtain prior judicial approval to subpoena an attorney before a grand jury where the prosecutor will seek to compel the attorney to provide evidence against his present or former client.

Williams and Baylson supply the approach that guides us here. After all, nothing unfair happened before the grand jury. To start with, there is no suggestion that the questioning before the grand jury covered topics discrete from the subject matter that Gomez reasonably could have believed would be within the scope of his questioning, i.e., Three Rivers' billing practices and related matters. Thus, this is not a case in which a witness was brought before the grand jury on the ruse that the inquiry concerned a matter unrelated to that actually involved. Moreover, it is beyond doubt that Gomez had an adequate opportunity when he was served with the subpoena to consult with counsel

7

regarding his rights before the grand jury and the perils of testifying instead of invoking his privilege against self-incrimination. Indeed, almost any witness subpoenaed to testify before a grand jury would have such an opportunity. Thus, the situation before us is sharply different from that which concerned the Supreme Court in Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966), a case on which Gomez relies, i.e., that a witness in custody might be questioned without the implementation of procedural safeguards to secure his privilege against self-incrimination even though he does not have counsel present. Therefore, we see no reason to impose the requirement for warnings to be given witnesses in grand jury proceedings that Gomez requests. Consequently, we hold that the district court properly denied the motion to dismiss the indictment and correctly refused to suppress Gomez's grand jury testimony.2

For the foregoing reasons the judgment of conviction and sentence entered November 19, 1999, will be affirmed.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit
_____

2. We have noted that when the government subpoenaed Gomez he was not a target of the investigation. We do not imply by making this observation that we would have reached a different result if he had been a target. Obviously, we cannot decide that issue as it is not before us.