**UNITED STATES of America,**

v.

**Gene BAZEMORE, Appellant.**

**No. 02–1338.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Oct. 2, 2003.

Decided Oct. 3, 2003.

Before RENDELL, WEIS and GARTH, Circuit Judges.

OPINION OF THE COURT

RENDELL, Circuit Judge.

Following his convictions for mail fraud, making a false statement, and obstruction of justice, Gene Bazemore appeals from the District Court's denial of his Motion to Suppress statements made to investigators in a grand jury witness room during a pre-appearance interview. He contends that the investigators' failure to give him warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), rendered his statements inadmissible at trial. The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction pursuant to 18 U.S.C. § 1291. We will affirm.

As we write solely for the parties, we will recite only those facts relevant to the issue before us. A number of employees of the Philadelphia Medical Examiner's office, including Bazemore, were suspected of stealing personal effects of deceased individuals whose bodies were processed through the office. On August 31, 2000, Bazemore was served at his home with a federal grand jury subpoena requiring him to appear at the federal building in Philadelphia on September 12, 2000, to testify regarding this matter. Evidence at the suppression hearing established that an "Advice of Rights" notice, explaining Bazemore's constitutional rights to refrain from responding to questions and to seek representation, was attached to the subpoena.

Bazemore appeared at the grand jury suite pursuant to the subpoena, as did several of his co-workers who were also witnesses in the same matter. After waiting in the grand jury room for about an hour, two federal law enforcement officers asked Bazemore to accompany them to a witness interview room in order to prepare for the presentation of his testimony. According to the officers' testimony at the suppression hearing, all of the witnesses waiting with Bazemore were subjected to similar interviews. Bazemore assented to the interview, and he went with the officers to a separate, smaller interview room.

Once inside the interview room, Bazemore provided the officers with personal background information. After a short time, an Assistant United States Attorney joined the officers in the interview room

and explained that he was seeking Bazemore's cooperation in the investigation of the alleged thefts at the Medical Examiner's office. He asked a few questions about the matter, and Bazemore denied any knowledge of or participation in any such thefts. Testimony before the District Court indicated that the entire interview lasted approximately twenty minutes. Bazemore then left the room and returned to wait with the other witnesses until they were excused for the day.[1]

At the suppression hearing, the following evidence was adduced, through the testimony of both officers who were present on September 12, regarding the circumstances of the interview. The door to the interview room was closed while Bazemore was interviewed by the officers and the AUSA. The officers were wearing casual clothing, and neither of them carried a weapon or handcuffs. All parties spoke amiably, using conversational tones of voice. There was a phone on a table in the room. Although the officers suspected that Bazemore was involved in the thefts, they did not intend to arrest him or bring charges against him that day. They did not read Bazemore his rights, nor did they explicitly indicate that he was free to leave the room at any time.

Bazemore was subsequently indicted on charges relating to the thefts. He was also charged with making false statements based on his responses during the pre-appearance interview on September 12. He asked the District Court to suppress the statements he made during the interview, arguing that he was in custody at the time and, therefore, *Miranda* warnings were required.[2] After hearing testimony and argument on the Motion to Suppress, the District Court found that Bazemore was not in custody during the interview, and, thus, decided that the statements were admissible. Bazemore was subsequently convicted of making false statements, in addition to other crimes related to the thefts. He appeals the District Court's denial of his Motion to Suppress, reasserting his argument that he was in custody during the pre-appearance interview.

Where the historic facts are not in question, "we exercise plenary review with respect to the district court's determination as to whether the police conduct found to have occurred constitutes custodial interrogation under all the circumstances of the case." *United States v. Leese*, 176 F.3d 740, 741 (3d Cir.1999); *see also United States v. Gomez*, 237 F.3d 238, 239 (3d Cir.2000); *United States v. Benton*, 996 F.2d 642, 644 (3d Cir.1993).

We agree that Bazemore was not in custody, and thus not entitled to *Miranda* warnings, when he was interviewed on September 12. *Miranda* warnings are required in order to protect a suspect's Fifth Amendment right against self-incrimination only where the suspect is subjected to "custodial interrogation." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602; *see also, e.g., Oregon v. Mathiason*, 429 U.S. 492, 494, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). For Fifth Amendment purposes, a suspect is in custody if a "reasonable person" in the suspect's position would not feel free "to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995);

---

1. Due to a lack of time, Bazemore was not required to testify before the grand jury that day. He ultimately retained an attorney and declined to testify at a later date.

2. The Government concedes that the interview did constitute "interrogation" for Fifth Amendment purposes, so our discussion is limited to the question of whether Bazemore was in custody when he made the statements at issue.

accord *United States v. Mesa*, 638 F.2d 582, 587 (3d Cir.1980). In other words, courts should apply an objective test and find that a suspect is in custody where there has been a " 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam) (quoting *Mathiason*, 429 U.S. at 495, 97 S.Ct. 711); *see also Leese*, 176 F.3d at 743.

Applying this objective test to the facts here, we agree with the District Court and find that a reasonable person in Bazemore's position would have realized that he was free to terminate the interview at any time. We reached the same conclusion in a case with facts that are strikingly similar to the circumstances we consider now. In *United States v. Leese*, postal inspectors suspected Leese of misappropriating funds from the post office where she worked. 176 F.3d at 742. Two inspectors came to the post office while Leese was on duty, and the Postmaster instructed her to speak with the inspectors in his private office. *Id.* The door to the office was closed during the interview. *Id.* Both inspectors wore plain clothes, but one also wore a visible firearm. *Id.*

The inspectors explained that Leese was not under arrest, but did not inform her that she could leave the room or refuse to answer their questions. *Id.* The interview began with basic questions about post office procedure, and then moved on to specific inquiries about the discrepancies in funds. *Id.* At some point Leese asked to speak with her union steward before proceeding any further with the interview.

*Id.* at 742–43. Her request was honored, and when questioning eventually resumed, she confessed to taking the funds. *Id.* at 743. Faced with those facts, we stated:

> Where, as here, the individual has not been openly arrested when the statements are made, "something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates they would not have heeded a request to depart or to allow the suspect to do so."

*Id.* (quoting *Steigler v. Anderson*, 496 F.2d 793, 799 (3d Cir.1974)); *see Mathiason*, 429 U.S. at 495, 97 S.Ct. 711 (cautioning that courts must not construe "custody" too broadly). We went on to conclude that "the manner in which the Inspectors conducted their interview did not rise to a situation where Leese was either in custody or being significantly deprived of her liberty." *Id.* at 745.

Our discussion in *Leese* applies squarely to the instant case. Bazemore chose to appear at the grand jury suite without first consulting an attorney. He voluntarily agreed to be interviewed by the officers, who also solicited preparatory interviews from other witnesses waiting with Bazemore. He received notice of his rights along with his subpoena, and had ample time to review the notice himself or seek legal counsel.[3] That he elected not to do so does not elevate the subsequent interview to a custodial situation. *See United States v. Gomez*, 237 F.3d 238, 242 (3d Cir.2000) (reasoning that because a witness subpoenaed to appear before a grand jury had an adequate opportunity to consult with an attorney regarding his rights

---

**3.** The District Court noted that even if Bazemore was in custody for the purposes of *Miranda,* the "Advice of Rights" notice that accompanied his subpoena was sufficient to protect his right against self-incrimination.

Because we agree that Bazemore was not in custody, we refrain from commenting on whether such a notice satisfies the requirements of *Miranda.*

prior to his appearance, a prosecutor was not obligated to inform that witness of his rights before interviewing him).

There was no evidence that the officers who interviewed Bazemore dressed, spoke, or conducted themselves in an intimidating or coercive manner, or that they questioned Bazemore with the intention of arresting him. He was allowed to leave after the brief interview ended, and the mere fact that the door was closed throughout the interview does not reasonably imply that the situation was custodial. *See Mathiason,* 429 U.S. at 493, 495, 97 S.Ct. 711 (finding no custody where a suspect was interviewed behind a closed door); *Leese,* 176 F.3d at 742, 744 (same). The officers did not explain in so many words that Bazemore could refuse to answer and could leave at will, but they were not obligated to do so. *Cf. Gomez,* 237 F.3d at 241 (holding that a federal prosecutor is not "constitutionally mandated" to advise a grand jury witness of his right against self-incrimination before eliciting his testimony).

Under these circumstances, without more, we cannot find that Bazemore was in custody. The concept of custody, as it has been defined by the Supreme Court and applied in our own decisions discussed above, simply does not extend far enough to encompass a situation like Bazemore's pre-appearance interview. Accordingly, we will AFFIRM the order of the District Court.