

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-31-2007

# USA v. Perez

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1694

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Perez" (2007). *2007 Decisions.* Paper 673.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/673

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-1694

———

UNITED STATES OF AMERICA

v.

CARLOS MANUEL PEREZ,

Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. No. 03-cr-00554
District Judge: Hon. Juan R. Sanchez

———

Submitted Under Third Circuit LAR 34.1(a)

July 12, 2007

Before: SLOVITER, ALDISERT and ROTH, Circuit Judges.

(Filed:  July 31, 2007)

———

OPINION OF THE COURT

———

ALDISERT, Circuit Judge.

Carlos Perez appeals from his conviction of possession with intent to distribute

crack, cocaine and marijuana—in violation of 18 U.S.C. § 841(a)(1)—and of possession of a firearm in furtherance of a drug trafficking crime—in violation of 18 U.S.C. § 924(c)(1). He contends that his conviction was flawed because of (1) alleged prosecutorial misconduct before the grand jury, (2) alleged error by the District Court in refusing to suppress guns and drugs found after his girlfriend consented to a search of a car they both drove, (3) alleged error by the District Court in allowing his girlfriend to testify that Perez was a drug dealer, and (4) alleged insufficiency of the evidence supporting his conviction of possession of a firearm in furtherance of a drug trafficking crime. We find Perez's arguments devoid of merit and accordingly will affirm his conviction.

## I.

In the early morning of April 14, 2003, Allen Iverson, star of the Philadelphia 76ers basketball team, was in the vicinity of the Glam nightclub in Philadelphia when an assailant fired a gun in his direction. The gunfire struck Larry Robinson, one of Iverson's companions, who had been standing beside Iverson's Bentley automobile. The Philadelphia Police Department investigated the shooting and identified Carlos Perez as their prime suspect.

Ten days later—at approximately 5:30 a.m. on April 24, 2003—Philadelphia police officers assisted by a SWAT entry team arrived at the apartment Perez shared with his fiancee, Bobbi Lynn Compton, located at 9601 Ashton Road in the Northeast section of Philadelphia. They had intended to arrest Perez and execute a warrant to search his

residence. When the officers arrived, only Compton was present, but the search proceeded as planned. The officers advised Compton of the scope of the search warrant, which authorized them to seize "[a]ny handguns, ammunition, sports jerseys, proof of residency and any other items deemed to be of evidentiary value in this investigation." App. 72. Officers found a bulletproof vest in the bedroom shared by Perez and Compton.

The officers asked Compton whether she or Perez had any vehicles parked nearby, and she told them about a green 1995 Pontiac Grand Am that was parked in an adjacent lot. Compton explained that she was the registered owner of the Grand Am—the insurance was also in her name—but Perez had paid for it. The officers confirmed that Compton was the registered owner, and then asked her to consent to a search. She consented, and did not place any limitations on the scope of the search. She signed a consent form that one of the officers had drawn up, and gave the officers the keys.

During their search of the Grand Am, the officers found an unlocked duffel bag in the trunk. The duffel bag had a zipper which the recovering officer later recalled to have been at least partially open. The officers opened the bag and found inside approximately 39.5 grams of cocaine base ("crack"), approximately 990 grams of cocaine, approximately 275.6 grams of marijuana, a loaded .38 caliber revolver with an obliterated serial number, a .22 caliber Beretta pistol, Perez's passport, and his Pennsylvania non-driver's identification card.

On May 29, 2003, Compton testified before the Grand Jury investigating Perez. The Assistant U.S. Attorney questioned Compton about Perez's connection to the

3

shooting incident involving Iverson, and she testified that he had told her that he and a friend had argued with Iverson and his companions, and that he had fired several shots at Iverson's group. The Assistant U.S. Attorney also questioned Compton about Perez's involvement with the drug trade, and she testified that Perez sold cocaine and marijuana. She further testified that he carried guns regularly. The Grand Jury indicted Perez on four counts, charging him with (1) possession with intent to distribute cocaine base; (2) possession with intent to distribute cocaine; (3) possession with intent to distribute marijuana—each in violation of 18 U.S.C. § 841(a)(1); and (4) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

Perez filed motions to quash the indictment and to suppress the physical evidence. In his motion to suppress, he acknowledged that he owned the duffel bag that was found in the Grand Am's trunk, but moved to suppress the drugs and handguns found within it. The District Court denied his motions on June 10, 2005.

Perez's trial began on June 15, 2005. The District Court declared a mistrial five days later after the jury failed to reach a unanimous decision, and Perez's retrial commenced on October 25, 2005. The District Court prevented the government from introducing evidence of Perez's connection to the Iverson shooting, and also evidence that he had fired shots at an unidentified person on June 28, 2002, finding that the evidence's potential for prejudicing the jury outweighed its probative value. The jury convicted Perez on all counts, and the District Court sentenced him to 252 months' imprisonment. Perez appeals his conviction.

## II.

Perez first argues that the prosecutor committed misconduct before the grand jury by introducing evidence that Perez believes was prejudicial and lacking in foundation. Specifically, he contends that the prosecutor engaged in misconduct when he pursued "extensive questioning of witness Bobbi Compton about nothing more than a rumor that Mr. Perez was involved in an altercation with professional basketball player Allen Iverson in which Mr. Perez allegedly fired shots at Mr. Iverson and his associates," and also when the prosecutor elicited Compton's "admittedly unsubstantiated rank speculation that Mr. Perez was a drug dealer." Appellant's Br. 13. As a result of this alleged misconduct, Perez argues that the District Court should have dismissed his indictment.

When considering whether a District Court erred in failing to dismiss an indictment based on alleged error at the grand jury stage, our standard of review depends on the form of error alleged. Where Appellant does not allege a structural error or fundamental unfairness in grand jury proceedings, our review is governed by the harmless error rule. Rule 52(a), Federal Rules of Criminal Procedure; see Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988). On the other hand, if fundamental error was committed at the grand jury stage—that is, if "the structural protections of the grand jury [were] so compromised as to render the proceedings fundamentally unfair," we apply a "presumption of prejudice." Bank of Nova Scotia, 487 U.S. at 257.

In this case, Perez does not assert fundamental error at the grand jury stage, and so

5

we will apply the harmless error standard. Indeed, Perez acknowledges that harmless error review governs. Under the harmless error review standard, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Federal Rule of Criminal Procedure 52(a).

In making this concession, Perez gives up the game. Although he forges onward—arguing that grand jury error in the form of prosecutorial misconduct occurred, and that it was not harmless because it resulted in the introduction of evidence that was prejudicial to him—his effort is doomed from the start. He cannot surmount the strict manner in which the Supreme Court and this Court of Appeals have construed the harmless error standard as applied to alleged grand jury error.

In United States v. Mechanik, 475 U.S. 66, 69 (1986), the Supreme Court considered a claim that defendants had been prejudiced by "the simultaneous presence and testimony of . . . two Government witnesses before the grand jury," which the Supreme Court presumed to be a violation of Rule 6(d) of the Federal Rules of Criminal Procedure. The Supreme Court held that such error was rendered harmless by a subsequent finding of guilt by a petit jury. Id. at 70. As Justice Rehnquist put it in his majority opinion, "the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt." Id.

Perez might attempt to distinguish his claim from that in Mechanik; in Mechanik the defendants did not make a pre-trial motion to dismiss the indictment, id. at 68, and the

6

majority did not cast the violation of Rule 6(d) as prosecutorial misconduct. But any hope Perez might have had of distinguishing Mechanik is extinguished by precedent of this Court. In United States v. Console, 13 F.3d 641, 671 (3d Cir. 1993), the district court denied a pretrial motion to dismiss an indictment on the basis of alleged prosecutorial misconduct before the grand jury. The district court denied the motion notwithstanding its finding that "the prosecutor asked improper questions which implied that the defendants were guilty and assumed the existence of ultimate facts within the grand jury's sole discretion," and "that the prosecutor engaged in 'numerous examples of impermissible testifying, badgering and commenting on the veracity of witnesses and evidence.'" Id. at 671 n.40 (quoting the district court). We affirmed the conviction, determining that "the petit jury's guilty verdict rendered any prosecutorial misconduct before the indicting grand jury harmless." Id. at 672 (citing Mechanik, 475 U.S. at 70-72).

The same is true in the case before us today. The prosecutorial behavior alleged by Perez falls far short of the misconduct found by the district court in Console. See id. at 671 n.40. Indeed, we seriously doubt that Perez has alleged anything that could qualify as error at the grand jury stage.[1] But, as in Mechanik, any error Perez might have identified

---

[1] Perez not only fails to allege a violation of the Constitution, he also does not allege a violation of any Federal Rule of Criminal Procedure or of any statute or common-law rule governing grand juries. See United States v. Williams, 504 U.S. 36, 46 n.6 (listing rules that apply to grand jury proceedings). He does not even identify a specific ethical rule that he believes was violated—although it is far from clear we could consider such a violation to be cognizable error, given our limited supervisory powers over grand juries. See id. at 46-47. Perez alleges "prosecutorial misconduct" to have taken place, but whether we can recognize prosecutorial misconduct as a cognizable error in its own right when no underlying violation of a rule is alleged is doubtful; the malleability of the "prosecutorial misconduct" label may make it

7

is rendered harmless by his conviction beyond a reasonable doubt by the Petit Jury on October 27, 2005.

III.

Perez next alleges that the District Court improperly denied his motion to suppress physical evidence. He contends that the District Court should have suppressed the guns and drugs recovered from inside the duffel bag in the trunk of the Grand Am. He argues that his girlfriend's consent to the search of the vehicle was invalid, and also that it did not extend to the contents of the bag. As we stated in United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002), we "revie[w] the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercis[e] plenary review of the District Court's application of the law to those facts."

---

unsuitable to be considered an error in its own stead. See Williams, 504 U.S. at 54 (observing that "[a] complaint about the quality or adequacy of the evidence"—which cannot serve as the basis of dismissing a grand jury indictment—"can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading'"). If prosecutorial misconduct cannot in and of itself be considered an error in grand jury proceedings, then Perez's complaint can only be construed as a request for us to craft a new rule of grand jury procedure—a rule proscribing the introduction of overly prejudicial or inadequately supported testimony before grand juries. Although we need not reach the matter in this case, we note that "any power federal courts may have to fashion, on their own initiative, rules of grand jury procedure is a very limited one, not remotely comparable to the power they maintain over their own proceedings." Id. at 50; see United States v. Gomez, 237 F.3d 238, 240, 241-242 (3d Cir. 2000) (holding that a court may not require a prosecutor to advise a defendant "that he could remain silent and that anything he said could be used against him"); Baylson v. Disciplinary Bd. of the Supreme Court of Pennsylvania, 975 F.2d 102, 104, 111 (3d Cir. 1992) (holding that district courts lack the authority to establish a local rule requiring "a federal prosecutor to obtain prior judicial approval before serving a grand jury subpoena on an attorney where the attorney would be asked to testify about past or present clients").

A warrantless search, even if unsupported by probable cause, is proper if undertaken pursuant to valid consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Valid consent can come from "a third party who possesse[s] common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171 (1974). The government bears the burden of establishing that the third party had actual or apparent authority over the searched area. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990).

Perez gets nowhere with his argument that his girlfriend, Bobbi Compton, lacked actual and apparent authority to authorize a search of the Grand Am. Compton was the legal owner of the car and had the keys to it. Although Perez may have used the car more frequently than Compton did, Compton drove the car from time to time. By leaving his duffel bag inside the Grand Am, Perez assumed the risk that Compton would consent to a search of the car and its contents. See Matlock, 415 U.S. at 172 n.7; United States v. McCarthy, 77 F.3d 522, 535 (1st Cir. 1996); United States v. Beshore, 961 F.2d 1380, 1382 (8th Cir. 1992).

Perez's argument that the search of the contents of the zippered bag exceeded the scope of Compton's authorization is similarly unavailing. As the Supreme Court stated in Florida v. Jimeno, 500 U.S. 248, 251 (1991), "[t]he scope of a search is generally defined by its expressed object"—here, the Grand Am. The party consenting to a search "may of course delimit as [she] chooses the scope of the search to which [she] consents. But if [her] consent would reasonably be understood to extend to a particular container, the

9

Fourth Amendment provides no grounds for requiring a more explicit authorization." Id. at 252.

When the law enforcement officers executed the search warrant of Perez and Compton's apartment, they explained to Compton the scope of the warrant. The warrant sought "[a]ny handguns, ammunition, sports jerseys, proof of residency and any other items deemed to be of evidentiary value in [the] investigation." App. 72. In the context of this wide-ranging search, Compton consented to the search of the Grand Am. Although she had the right to limit the scope of the search, she did not do so. We must determine whether her consent could reasonably be understood to extend to the bag in the trunk.

Two cases guide our analysis. In Florida v. Wells, 495 U.S. 1, 2, 4-5 (1990), the Supreme Court held that "a locked suitcase in the trunk" of a car was not properly opened as part of an inventory search. In contrast, the following year the Supreme Court held that a suspect's consent to search his car allowed law enforcement officers to open a "folded, brown paper bag on the floorboard" of the car's passenger side. Jimeno, 500 U.S. at 250, 251-252.

The facts of the case before us resemble those in Jimeno. The bag in the trunk of the Grand Am was unlocked and apparently was partially or completely unzipped. It was easily opened with minimal intrusion, like the paper bag in Jimeno. It was capable of holding several if not all of the items for which Compton knew the officers were searching. The Supreme Court stated in Jimeno, id., that "[i]t is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking

10

open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag." We find it inconsequential that the bag in the trunk of the Grand Am was made not of paper but of cloth. Jimeno controls, and we conclude that the officers did not go beyond the scope of the authorized search when they inspected the contents of the duffel bag.

IV.

Perez argues that, under Rule 701 of the Federal Rules of Evidence, the District Court should have excluded Compton's testimony that Perez was a drug dealer and possessed firearms. Perez objected to this testimony at trial based on Rule 404(b) of the Federal Rules of Evidence, relating to character evidence. He now argues under Rule 701 that the testimony was impermissible lay opinion testimony. As we observed in United States v. Williams, 464 F.3d 443, 445 (3d Cir. 2006), "[t]here is no evidence that [Appellant] objected on this basis at trial, and we therefore review the instructions for plain error." We will not find plain error here.

Rule 701, the basis of Perez's current objection, states:

> If the witness is not testifying as an expert, the witness'
> testimony in the form of opinions or inferences is limited to
> those opinions or inferences which are (a) rationally based on
> the perception of the witness, (b) helpful to a clear
> understanding of the witness' testimony or the determination
> of a fact in issue, and (c) not based on scientific, technical, or
> other specialized knowledge within the scope of Rule 702.

As we noted in Teen-Ed, Inc. v. Kimball Int'l, Inc., 620 F.2d 399, 403 (3d Cir. 1980), "[a] lay witness in a federal court proceeding is permitted under [Federal Rule of Evidence

11

701] to offer an opinion on the basis of relevant historical or narrative facts that the witness perceived." Indeed, "[t]he modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." Id.

In the case at bar, Perez maintains that Compton's testimony was improper because she had no evidence to support her statements that he was a drug dealer who possessed firearms. Perez contends that Compton "had neither first nor second hand knowledge that [he] sold drugs." Appellant's Br. 25. We disagree.

Compton stated that her testimony was based on her personal perceptions. Perez provided her with marijuana, which she smoked, and when he referred to his "work," she understood within the context of their relationship that he was referring to drug dealing. App. 408. She also overheard Perez's conversations with others, who requested from Perez items identified by numbers, which she took to be drugs. The government inquired into these conversations:

Q:     And what was your understanding as to what those numbers—will you give us an example of that?

A:     People asking for numbers, like, four and halves, nines, it's talking about cocaine.

App. 409.

Compton's testimony was based on her direct observations and perceptions of Perez's behavior. It was helpful to the jury, and not based on technical or scientific knowledge. Accordingly, the District Court did not commit plain error by allowing

12

Compton's testimony notwithstanding Rule 701's restrictions on lay opinion testimony.

V.

Finally, Perez argues that the evidence presented at trial was insufficient to support the jury's finding beyond a reasonable doubt that he possessed a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). As with any post-conviction challenge to the sufficiency of evidence, this one faces an uphill climb:

> We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence. "It is not for us to weigh the evidence or to determine the credibility of the witnesses." Rather, we must view the evidence in the light most favorable to the government, and will sustain the verdict if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Thus, "a claim of insufficiency of the evidence places a very heavy burden on an appellant."

United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1988) (citations omitted) (quoting United States v. Voigt, 89 F.3d 1050, 1080 (3d Cir. 1996); United States v. Thomas, 114 F.3d 403, 405 (3d Cir. 1997); United States v. Gonzalez, 918 F.2d 1129, 1132 (3d Cir. 1990)).

Both parties apparently agree that the relevant evidence consists of the two handguns and assorted illegal drugs found beside each other in a bag in the Grand Am's trunk. Perez argues that the proximity of the guns to the drugs was insufficient to support his conviction. He suggests that the government was required to show that he "used or carried" a firearm during and in relation to a drug trafficking offense or a crime of violence, and that the government failed to make this showing. Appellant's Br. 27. In his

13

reply brief, he further argues that the government was required to show that he "took some affirmative step to possess the gun to further his participation in a drug trafficking crime," and that the government failed to do so. Appellant's Reply Br. 5.

As an initial matter, we note that 18 U.S.C. § 942(c) does not require a showing that a defendant used or carried a firearm. The relevant part of the statute states that it applies generally to "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, <u>or who, in furtherance of any such crime, possesses a firearm</u> . . . ." 18 U.S.C. § 924(c)(1)(A) (emphasis added). This language makes clear that, while using or carrying a firearm may be grounds for conviction, possession in furtherance of a drug trafficking crime also may suffice.

Interpreting the possession prong of § 924(c), we have stated that "the evidence must demonstrate that possession of the firearm advanced or helped forward a drug trafficking crime." <u>United States v. Sparrow</u>, 371 F.3d 851, 853 (3d Cir. 2004). In determining whether this is so, we consider the following nonexclusive list of factors:

> 'the type of drug activity that is being conducted, accessibility
> of the firearm, the type of the weapon, whether the weapon is
> stolen, the status of the possession (legitimate or illegal),
> whether the gun is loaded, proximity to drugs or drug profits,
> and the time and circumstances under which the gun is
> found.'

<u>Id.</u> (quoting <u>United States v. Ceballos-Torres</u>, 218 F.3d 409, 414-415 (5th Cir. 2000)). Immediate accessibility of the weapon is not a requirement for a § 924(c) conviction. <u>See</u> <u>id.</u> at 854 (affirming a conviction under § 924(c) in a case in which law enforcement

14

officers found a firearm hidden in a compartment underneath floor tiles along with nine bags of marijuana and $140 cash).

In this case, officers found two handguns in the trunk of a car Perez regularly drove, in his duffel bag, alongside a sizable quantity of marijuana, cocaine and crack. One of the two handguns was loaded and had an intentionally obliterated serial number. The facts are not unlike those in <u>Sparrow</u>, 371 F.3d at 853, in which "[t]he gun was placed so that it would be immediately available for Sparrow's protection whenever he retrieved drugs or money from the floor compartment." In that case, we found it "reasonable to assume the firearm was placed in the floor compartment for that purpose and was possessed in furtherance of Sparrow's drug activities." <u>Id.</u> Likewise in this case, we are satisfied that the evidence was sufficient for a rational trier of fact to conclude that Perez possessed a firearm in furtherance of a crime of violence or drug trafficking crime.

\* \* \* \* \* \*

The judgment of the District Court will be affirmed.

———

15