OPINION
{¶ 1} Appellant, the state of Ohio, appeals the judgment entered by the Portage County Court of Common Pleas. The trial court granted a motion to suppress evidence filed by appellee, James R. Sutcliffe. This case concerns the exigent circumstances exception to the search warrant requirement prescribed by the Fourth Amendment to the United States Constitution. Because exigent circumstances did not exist at the time the investigating officer searched Sutcliffe's residence, we affirm the trial court's decision to suppress the evidence. *Page 2 
 {¶ 2} Jason Boivin is a part-time, volunteer firefighter with the Deerfield Fire Department. On April 17, 2008, Firefighter Boivin responded to a residence on Route 224 in Deerfield Township regarding a reported fire. Firefighter Boivin responded in a rescue squad, since he had been teaching a fire extinguisher training class prior to the call.
 {¶ 3} Upon arriving at the residence, Firefighter Boivin noticed flames coming from a first-story window of the residence. He knocked down most of the flames with a fire extinguisher. He then waited for other firefighters to arrive with a fire engine. After the engine arrived, Firefighter Boivin conducted a search of the residence. The first floor was mostly clear, with some minor kindling still burning. On the second floor, Firefighter Boivin found a dog, which he rescued from the house. No people were in the house.
 {¶ 4} Firefighter Boivin returned to the second floor of the house, which was filled with heavy smoke. He vented some of the second floor. However, he could not access one of the rooms because it was securely locked. Firefighter Boivin was concerned about the possibility of smoke or fire in this room due to its proximity to the flames on the outside of the house. He used his ax to break through the wall and open the door from the inside. Upon entering the secured room, Firefighter Boivin observed thick smoke. In addition, he observed "growing supplies." He broke the window of the room to vent the smoke.
 {¶ 5} Firefighter Boivin reported the growing supplies to his supervisor, Assistant Chief David Allison, who called the Portage County Sheriff's Office. *Page 3 
Thereafter, the firefighters vented the house. Firefighter Boivin testified that the fire was out and the house was vented by the time members of the sheriff's office arrived.
 {¶ 6} Sergeant James Carrozzi of the Portage County Sheriff's Office responded to the residence to investigate the purported illegal grow of marijuana. Sergeant Carrozzi is the supervisor of the Portage County Drug Task Force. Firefighter Boivin showed Sergeant Carrozzi the room with the illegal grow. Sergeant Carrozzi did not obtain a search warrant prior to himself or other law enforcement officials entering Sutcliffe's residence.
 {¶ 7} Sergeant Carrozzi identified the plants in the room as marijuana plants. He took photographs of the items in the room, which included: the marijuana plants, grow lights, and watering lines. Then, Sergeant Carrozzi and other members of the drug task force seized the items and transported them to the drug task force headquarters.
 {¶ 8} Sutcliffe lived at the residence in question; however, he was not present at any time during the suppression of the fire or the seizure of the items.
 {¶ 9} Sutcliffe was indicted on one count of cultivation of marijuana, in violation of R.C. 2925.04 and a fifth-degree felony, and one count of possession of criminal tools, in violation of R.C. 2923.24 and a fifth-degree felony. Sutcliffe pled not guilty to these charges.
 {¶ 10} Sutcliffe filed a motion to suppress the evidence obtained as a result of the search of his home. The trial court conducted a hearing on Sutcliffe's motion. Firefighter Boivin and Sergeant Carrozzi testified. After the hearing, the trial court granted Sutcliffe's motion to suppress. *Page 4 
 {¶ 11} The state has filed this appeal pursuant to R.C. 2945.67(A).
 {¶ 12} The state raises the following assignment of error:
 {¶ 13} "Once the privacy of a dwelling has been lawfully invaded, a second officer from another law enforcement agency arriving on the scene is not required to secure a search warrant before entering the premises to take custody of contraband. The trial court erred in granting Sutcliffe's motion to suppress."
 {¶ 14} "Appellate review of a motion to suppress presents a mixed question of law and fact." State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8. The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. Id., citing State v. Fanning (1982), 1 Ohio St.3d 19. Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard. Id., citingState v. McNamara (1997), 124 Ohio App.3d 706.
 {¶ 15} In his motion to suppress, Sutcliffe argued that the search by Sergeant Carrozzi violated his Fourth Amendment rights because it was conducted without a warrant.
 {¶ 16} "The Fourth Amendment safeguards: `(t)he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and noWarrants shall issue, but upon probable cause, supported by Oath oraffirmation, and particularly describing the place to be searched, andthe persons or things to be seized.'" State v. Andrews,177 Ohio App.3d 593, 2008-Ohio-3993, at ¶ 19, quoting the Fourth Amendment to the United States Constitution. (Emphasis added by Andrews Court.) *Page 5 
 {¶ 17} There are, however, exceptions to the warrant requirement.State v. Semik (Jan. 22, 1987), 8th Dist. No. 51588, 1987 Ohio App. LEXIS 5592, at *3. (Citations omitted.) "One such exception, based upon exigent circumstances, is the warrantless entry by fire-fighters to extinguish flames." Id.
 {¶ 18} "The burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries.' Welsh v. Wisconsin (1984),466 U.S. 740, 750 * * *. The United States Supreme Court has recognized only a few emergency circumstances that qualify as `exigent circumstances.' Id. at 749-750. Some of the current exigent circumstances include: `hot pursuit,' imminent destruction of the evidence, and ongoing fire. Id. at 750." State v. Townsend (Aug. 27, 1999), 11th Dist. No. 98-L-036, 1999 Ohio App. LEXIS 3986, at *7-8. (Parallel citations omitted.)
 {¶ 19} In Michigan v. Tyler, a fire occurred at a furniture store at approximately midnight. Michigan v. Tyler (1978), 436 U.S. 499, 501. By the time the fire chief arrived at 2:00 a.m., the fire was mostly extinguished with some smoldering embers. Id. The fire chief suspected the fire was an arson, so he contacted a police detective, who arrived about 3:30 a.m. Id. at 502. Because smoke and steam made the search difficult, the police detective and the fire chief stopped their search at 4:00 a.m. Id. Both individuals returned the following morning, between 8:00 and 9:00 a.m., without a search warrant, to continue investigating the cause of the fire. Id. At that time, they discovered evidence of arson. Id. Nearly one month later, an additional search was conducted at the furniture store. Id. at 503. The Supreme Court of the United States *Page 6 
held that exigent circumstances eliminated the warrant requirement for the initial searches. Id. at 510. Specifically, the court held:
 {¶ 20} "Fire officials are charged not only with extinguishing fires, but with finding their causes. Prompt determination of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. Immediate investigation may also be necessary to preserve evidence from intentional or accidental destruction." Id.
 {¶ 21} In addition, the court held that no warrant was necessary for the investigation a few hours after the fire, since that investigation was a "continuation" of the first entry into the store. Id. at 511. However, the court held that the exigent circumstances no longer existed at the time of the search nearly one month later, thus, a search warrant was required for that search. Id.
 {¶ 22} The United States Supreme Court again addressed the search warrant requirement in the case of a fire in Michigan v. Clifford
(1984), 464 U.S. 287. In Clifford, a fire occurred at a home in the early morning hours, and the residents were out of town at that time. Id. at 289-290. The firefighters and police officers left the scene shortly after 7:00 a.m. Id. A fire investigator arrived at the scene about 1:00 p.m. to investigate the fire. At that time, a work crew was at the home boarding it up and pumping water out of the basement. Id. The fire investigator discovered evidence of arson. Id. at 291. In holding that the search by the fire investigator was invalid, the United States Supreme Court distinguished the Clifford case from theTyler case on several points. First, the court noted that the search inClifford was not a continuation of the initial search, and that the homeowners had taken steps to secure their privacy interests in *Page 7 
the home. Id. at 296. Also, the court noted that there are greater privacy interests in a residential home than there are in a commercial business, such as a furniture store. Id.
 {¶ 23} Further, the United States Supreme Court noted that the object of the search was critical. Id. at 294. The court held that "[i]f the primary object of the search is to gather evidence of criminal activity, a criminal search warrant may be obtained only on a showing of probable cause to believe that relevant evidence will be found in the place to be searched." Id. The court continued, "[t]he object of the search is important even if exigent circumstances exist. Circumstances that justify a warrantless search for the cause of a fire may not justify a search to gather evidence of criminal activity once that cause has been determined." Id. In a footnote, the court explained:
 {¶ 24} "The plain-view doctrine must be applied in light of the special circumstances that frequently accompany fire damage. In searching solely to ascertain the cause, firemen must remove rubble or search other areas where the cause of fires is likely to be found. An object that comes into view during such a search may be preserved without a warrant." Id. at 294, fn. 6.
 {¶ 25} In State v. Grant (Nov. 9, 1990), 7th Dist. No. 83 C.A. 144, 1990 Ohio App. LEXIS 4949, fire investigators investigated a fire that resulted in the deaths of two children. Id. at *7. The Seventh Appellate District quoted the following language from the Pennsylvania Supreme Court:
 {¶ 26} "`Reading Tyler and Clifford together, certain principles regarding the Fourth Amendment and investigations of the causes and origins of fire are clear. Firemen have the right to enter a private residence without a warrant without violating the Fourth andFourteenth Amendments of the United States Constitution, if done so for *Page 8 
the purpose of extinguishing a fire. While performing the task, firemen may seize any evidence, which is in plain view, of the cause and origin of the fire. In fighting the fire, fire officials are also immediately charged with determining the cause and origin of the fire. The purposes of the investigation into the cause and origin of the fire may properly include prevention of the rekindling of the fire, and prevention of the destruction of evidence, either accidentally or intentionally. When the search is conducted for one of these purposes, no search warrant is necessary, even if consent has not been granted, but only if the search is a continuation of an initial entry. If the nonconsenting, warrantless entry is begun, but must be terminated due to the condition of the building, then that search may be continued at the first instance reentry is possible. Finally, if it is clearly shown that the search isnot for the purpose of determining the cause and origin of the fire, butrather to obtain evidence of criminal activity, then such search musteither be with consent or with a valid search warrant.'" Id. at *11-12, quoting Commonwealth v. Smith (Pa. 1986), 511 A.2d 796, 800-801. (Emphasis added.)
 {¶ 27} The Supreme Court of Ohio addressed the suppression of evidence in State v. Grant (1993), 67 Ohio St.3d 465, 470. In Grant, a warrantless search occurred within a few hours of the fire being extinguished. Id. The court held that the search was valid because the evidence at the scene, particularly the odor of accelerants, was "ephemeral," and there was a continuing risk of reignition of the fire. Id.
 {¶ 28} In another Ohio case, State v. Behrens (Nov. 18, 1993), 8th Dist. No. 63837, 1993 Ohio App. LEXIS 5549, the Eighth Appellate District upheld a warrantless search of a defendant's garage by a police officer following a fire. Id. at *11-12. The court held exigent circumstances existed because the police officer was assisting in the *Page 9 
investigation of the fire and there was a risk of destruction of the evidence due to the presence of oxygen tanks in the garage. Id. at *9-11.
 {¶ 29} In this matter, the trial court found there was a conflict in the testimony of Firefighter Boivin and Sergeant Carrozzi. In resolving this conflict, the trial court held, "Carrozzi's testimony and Boivin's testimony conflicted occasionally and this Court gives deference to the firefighter's testimony relative to the accounts concerning the fire and sequence of events at the scene." Again, for the purposes of this appeal, we are bound to accept the trial court's factual determinations.State v. Burnside, supra, at ¶ 8, citing State v. Fanning, supra.
 {¶ 30} At the motion to suppress hearing, Firefighter Boivin testified as follows:
 {¶ 31} "A. [The police officers] said `where is the stuff that you found,' and I lead them upstairs and showed them the room.
 {¶ 32} "Q. What was the condition of the house at that point in time? Was it still smoky?
 {¶ 33} "A. No, it was clear. Fire was out.
 {¶ 34} "Q. But was there still smoke?
 {¶ 35} "A. No. Fire was out, smoke was clear. It was vented."
 {¶ 36} In the case sub judice, Firefighter Boivin was properly in the locked room to check for additional hot spots and to ensure the fire was not spreading to additional areas of the home. Thus, his discovery of the grow items was permissible under the plain-view doctrine.
 {¶ 37} This case is distinguishable from many of the above cases for several reasons. First, the investigating officers in Grant, Tyler,Clifford, and Behrens were all *Page 10 
investigating the cause of a fire. State v. Grant, 67 Ohio St.3d at 470;Michigan v. Tyler, 436 U.S. at 502; Michigan v. Clifford,464 U.S. at 291; and State v. Behrens, 1993 Ohio App. LEXIS 5549, at *9. Such activity is permissible under the exigent circumstances exception to theFourth Amendment warrant requirement. Michigan v. Tyler,436 U.S. at 510. In this matter, Sergeant Carrozzi was not at the scene to investigate the cause of the fire or to assist in putting out the fire itself. Instead, he specifically responded to the scene to investigate a possible marijuana grow. Thus, the sole purpose of his search of the residence was to gather evidence of criminal activity.
 {¶ 38} Also, in this matter, there was no risk of destruction or loss of the evidence as there was in Grant and Behrens. State v. Grant,67 Ohio St.3d at 470; State v. Behrens, 1993 Ohio App. LEXIS 5549, at *11. To the contrary, the evidence demonstrated that the fire was out and the house was vented.
 {¶ 39} The state has cited State v. Newcome (1987), 41 Ohio App.3d 51, where the Third Appellate District held that certain items seized by the firefighters in that case did not violate the defendant'sFourth Amendment rights due to the exigent circumstances exception. InNewcome, firefighters seized pills, money, weapons, and ammunition from a residence that was on fire. Id. at 53. Thereafter, police officers inventoried some of the seized items. Id. at 54. Of particular concern was the presence of live ammunition in a room that had "hot spots." Id. at 52. As the state notes in its brief, the Third District held that "the search was not stopped and begun at a later time but continued during the entire fire-fighting process and was essential to the process even though the major area of fire was under control." Id. at 53. Thus, the court held that exigent circumstances existed. Id. at 52. *Page 11 
 {¶ 40} In the case sub judice, the fire was completely out and the house was vented prior to Sergeant Carrozzi beginning his search and prior to his seizure of the marijuana plants. Moreover, unlike the case in Newcome, in the instant matter, there was no evidence presented that the contraband items posed a risk of harm.
 {¶ 41} The state also cites Steigler v. Anderson (C.A.3, 1974),496 F.2d 793 and United States v. Green (C.A.5, 1973), 474 F.2d 1385 in support of its argument that a search warrant is not required for a second state agent to enter a residence after a firefighter discovers an illegal item in plain view. In Anderson and Green, the illegal items were believed to be the cause of the respective fires. Steigler v.Anderson, 496 F.2d at 795; United States v. Green, 474 F.2d at 1387. As such, there existed exigent circumstances in the prompt removal of those items to avoid the fires restarting. In this matter, there was no evidence presented that the marijuana plants or the growing equipment caused the fire. Instead, Firefighter Boivin testified that the fire was primarily on the first floor of the house, and the items were found on the second floor.
 {¶ 42} In addition, it is important to note that both of the fire officials in Anderson and Green were law enforcement agents due to their status as agents of the state fire marshals. Steigler v. Anderson,496 F.2d at 795; United States v. Green, 474 F.2d at 1389. For example, inGreen, Henry Melzer, the "Deputy State Fire Marshal for the City of Jacksonville," had the statutory authority to "serve summonses, make arrests, carry firearms and make searches and seizures." United Statesv. Green, 474 F.2d at 1390, fn. 2. (Citation omitted.) We note there was no evidence presented that part-time, volunteer Firefighter Boivin had similar law enforcement authority. Instead, the record reveals he is serving his community as a part-time, volunteer firefighter. *Page 12 
 {¶ 43} Finally, unlike the circumstances in State v. Newcome orUnited States v. Green, Firefighter Boivin did not seize the items.United States v. Green, 474 F.2d at 1387; State v. Newcome,41 Ohio App.3d at 53. Instead, he acted appropriately in reporting the find to his supervisor, who contacted law enforcement personnel.
 {¶ 44} In this matter, Firefighter Boivin testified that the fire was completely out by the time Sergeant Carrozzi and other members of the drug task force arrived at the scene. There was no evidence of any risk of destruction of evidence or additional flare-ups due to the presence of the contraband. Based on the record in this case, there is no evidence that Firefighter Boivin was in a situation different than another public employee, whether a city water employee or a social worker, who had permission to be in the residence of a private citizen to conduct their official duties and observed contraband during that time. He was permissibly in Sutcliffe's residence due to the exigent circumstances of the fire. While inside the house, he observed items that appeared to be illegal, and those items were reported to law enforcement. Since there were no exigent circumstances present at the time the officers entered, a search warrant should have been obtained.
 {¶ 45} The state's assignment of error is without merit.
 {¶ 46} The judgment of the trial court is affirmed.
 CYNTHIA WESTCOTT RICE, J., COLLEEN MARY O'TOOLE, J., concur. *Page 1