[Cite as *State v. Mattocks*, 2013-Ohio-4965.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2013-P-0015** |
| PIERRE W. MATTOCKS, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2012 CR 00812.

Judgment: Reversed and remanded.

*Victor Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellant).

*Patricia J. Smith*, 9442 State Route 43, Streetsboro, OH 44241 and *Sylvia A. Rhodes*, P.O. Box 514, Kent, OH 44240 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1} Plaintiff-appellant, the State of Ohio, appeals from the Judgment Entry of the Portage County Court of Common Pleas, granting defendant-appellee, Pierre W. Mattocks', Motion to Suppress. The issue to be decided in this case is whether exigent circumstances to enter a defendant's home without a warrant exist when police officers enter the home after seeing the defendant standing inside, facing the officers and

holding a gun.  For the following reasons, we reverse and remand the decision of the court below.

{¶2}  On November 29, 2012, the Portage County Grand Jury indicted Pierre for Resisting Arrest, a felony of the fourth degree, in violation of R.C. 2921.33(C)(1); Domestic Violence, a misdemeanor of the first degree, in violation of R.C. 2919.25(A); and Having Weapons While Under Disability, a felony of the third degree, in violation of R.C. 2923.13(A)(2).

{¶3}  On December 26, 2012, Pierre filed a Motion to Suppress, in which he requested that evidence obtained as a result of the warrantless entry of his home, his arrest, and the subsequent search be suppressed.  He argued that the police officers lacked probable cause to arrest him and had no justification for entering or searching his residence, where they recovered two firearms.

{¶4}  A suppression hearing was held on January 14, 2013.  The sole testimony was given by Sergeant Thomas Eskridge of the Ravenna Police Department.  He testified that on November 22, 2012, at approximately 1:00 a.m., he responded to a domestic violence call at 421 Myrtle Street in Ravenna.  According to a 911 call from Patience Mattocks, her husband, Pierre Mattocks, came home intoxicated, was "pushing her around," destroyed items in the home, pushed her outside, and locked her out of the home.  Patrolman Holloway and Lieutenant Mullen also responded to the call.

{¶5}  Upon arriving at the home, Sergeant Eskridge met with Patience, who stated that she and Pierre were arguing about Pierre drinking and driving with a suspended license.  Patience stated that Pierre "shoved her so hard it knocked her to

the ground." Patience threatened to call the police and Pierre held her to the bed and took her cell phone away. Patience told the officers that she wanted Pierre arrested.

{¶6} The officers knocked on several windows and doors at the home, received no response, and then had dispatch call Pierre. Pierre told dispatch he would not come to the door and had done nothing wrong. Dispatch called a second time and asked Pierre to bring Patience some personal belongings so she could stay elsewhere. Pierre stated that he would comply but that when he came to the door, the police "better be off his property."

{¶7} Sergeant Eskridge, Patrolman Holloway, and Patience walked to a sliding glass door located at the rear of the house and discovered that it was locked. Patience called Pierre on her cell phone and he stated that he was on his way downstairs with her belongings. Sergeant Eskridge observed Pierre walk down a stairwell and approach the glass door, holding a flashlight, which he shined in Sergeant Eskridge's eyes. After moving out of the light, Sergeant Eskridge noticed that Pierre was holding a handgun directly beside his right thigh. Sergeant Eskridge pushed Patience off of the porch, drew his gun, and ordered Pierre to drop the gun, to which Pierre responded by saying "Castle Law."

{¶8} After several orders to drop the gun, with which Pierre did not comply, he eventually said "okay," and turned his back partially to the officers. He put his left hand up and raised the gun above his head. Sergeant Eskridge testified that he initially could not tell what Pierre was doing, but then noticed that he was "manipulating" the gun above his head. Pierre released the magazine from the weapon and set it on the kitchen table. He took the slide off of the top of the gun and placed the gun and slide on

3

the table. He walked over to the glass sliding door, unlocked it, turned away, and started to walk back through the house. Sergeant Eskridge ordered him to the ground, he did not comply, and the officers entered the house. Police ultimately handcuffed Pierre, following a struggle.

{¶9} Afterward, Sergeant Eskridge retrieved the gun and magazine, which contained sixteen hollow point bullets. Around the corner, he also found an unloaded shotgun.

{¶10} Sergeant Eskridge put Pierre in his cruiser and transported him to jail. Patience then gave a written statement to Patrolman Holloway, indicating that Pierre had been home when she arrived and was sleeping.

{¶11} On cross-examination, Sergeant Eskridge testified that he did not observe any injuries on Patience on the date of the incident. He also indicated that he did not intend to arrest Pierre at the time he began knocking on the door, instead, he wanted to get Pierre's side of the story. He explained that Pierre never directly pointed the gun at him or anyone else.

{¶12} In the trial court's February 15, 2013 Judgment Entry, granting Pierre's Motion to Suppress, the court made factual findings consistent with the foregoing testimony.

{¶13} In its legal conclusions, the trial court held that the officers did not have a legal basis to enter Pierre's home and arrest him. It held that R.C. 2935.03, which allows for warrantless arrests in certain domestic violence cases, did not apply, since no written statement of the allegations was taken prior to the entry of Pierre's home and Sergeant Eskridge stated that it was not his intention to arrest the defendant.

4

**{¶14}** The court also held that "[e]ntrance [into the home] was gained without a warrant, without consent and without any articulable exigent circumstances." The court found that Sergeant Eskridge never articulated his rationale for entering the residence. The court held that the search of the residence was made during an unlawful arrest, did not fall under the exceptions to the warrant requirement, and that all illegally seized items must be suppressed.

**{¶15}** The State filed a Motion to Stay the Execution of Judgment on February 21, 2013, which was granted by the trial court.

**{¶16}** The State timely appeals and raises the following assignments of error:

**{¶17}** "[1.] The Portage County Court of Common Pleas erred in finding the state failed to establish exigent circumstances to justify a warrantless entry of Mattocks' home.

**{¶18}** "[2.] The Portage County Court of Common Pleas erred in granting Mattocks' motion to suppress evidence that was seized after a lawful entry and incident to arrest."

**{¶19}** "The trial court acts as trier of fact at a suppression hearing and must weigh the evidence and judge the credibility of the witnesses." (Citations omitted.) *State v. Ferry*, 11th Dist. Lake No. 2007-L-217, 2008-Ohio-2616, ¶ 11. "[T]he trial court is best able to decide facts and evaluate the credibility of witnesses." (Citation omitted.) *State v. Wagner*, 11th Dist. Portage No. 2010-P-0014, 2011-Ohio-772, ¶ 12. "The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence." *State v. Hines*, 11th Dist. Lake No. 2004-L-066, 2005-Ohio-4208, ¶ 14.

5

"Once the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts." (Citations omitted.) *Ferry* at ¶ 11.

**{¶20}** As an initial matter, we note that Pierre argues that the State is precluded from making any of the arguments it raised in its brief, due to issue preclusion, since they were not raised below. During the suppression hearing, the State presented testimony specifically regarding the danger to the officers from Pierre's conduct, argued to the court that Pierre posed a threat to the officers' safety, and indicated that the weapons were seized after Pierre's arrest. The exigent circumstances issue and the basis for the seizure of the items were specifically ruled upon by the trial court. We find that these issues were sufficiently raised below by the State for this court to consider them.

**{¶21}** In its first assignment of error, the State argues that the officers were justified in entering Pierre's home without a warrant since exigent circumstances existed. It asserts that there were concerns for both Patience and the officers' safety, due to the fact that Pierre had approached the area where they were standing outside of the door while holding a gun.

**{¶22}** Pierre asserts that there were no exigent circumstances, since, at the time the officers entered the home, Pierre had disabled the gun, placed it on the table, and did not pose a threat to anyone.

**{¶23}** A "presumption of unreasonableness * * * attaches to all warrantless home entries." *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *State v. Sutcliffe*, 11th Dist. Portage No. 2008-P-0047, 2008-Ohio-6782, ¶ 18.

6

{¶24} The Fourth Amendment requires that "[t]he right of the people to be secure in their * * * houses * * * shall not be violated." "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 589-590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "The burden is on the government to demonstrate exigent circumstances that overcome" the presumption of unreasonableness for warrantless home searches. *Welsh* at 750.

{¶25} "'Exigency' denotes the existence of 'real immediate and serious consequences' that would certainly occur were a police officer to postpone action to get a warrant." *State v. Stanberry*, 11th Dist. Lake No. 2002-L-028, 2003-Ohio-5700, ¶ 14, citing *Welsh* at 751.

{¶26} Exigent circumstances have been found to exist, and a warrant for a search or entry into a home unnecessary, when police must conduct a search to avoid destruction of evidence, as well as in situations where the police are faced with a "need to protect or preserve life or avoid serious injury." *Id.* at ¶ 15, citing *Mincey v. Arizona*, 437 U.S. 385, 391-392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The exigent circumstances exception applies when "law enforcement officers * * * have reasonable grounds to believe that there is [an] immediate need to protect their lives or others." *State v. Pape*, 11th Dist. Ashtabula No. 2004-A-0044, 2005-Ohio-4657, ¶ 23; *State v. Sharpe*, 174 Ohio App.3d 498, 2008-Ohio-267, 882 N.E.2d 960, ¶ 48 (2nd Dist.) (exigent circumstances are present when "someone inside [a home] poses a danger to the police officer's safety"). "While the Fourth Amendment requires that residential

thresholds and the sanctity of the home be respected, that is reasonably overcome by threats to the officer's safety that a suspect's conduct creates." *State v. Barber*, 2nd Dist. Montgomery No. 19017, 2002-Ohio-3278, ¶ 17.

{¶27} Under the State's argument, Sergeant Eskridge and the other officers were permitted to enter Pierre's home because they were faced with a danger to their safety, as well as Patience's safety, since Pierre did not drop the handgun he was holding upon the officer's command. We agree.

{¶28} The fact that a firearm may be located within a private home is not, by itself, sufficient to create an exigent or emergency circumstance. *Sharpe* at ¶ 50, citing *United States v. Keyes*, 6th Cir. No. 03-6041, 2005 U.S. App. LEXIS 16783, 14 (Aug. 9, 2005). However, "a risk of danger from its use" does create an exigent circumstance. *Id.* Exigent circumstances exist when an officer relates facts to support a conclusion that "the suspect was armed and likely to use a weapon or become violent." *United States v. Bates*, 84 F.3d 790, 795 (6th Cir.1996) (the presence of a weapon in the home can create an exigency when coupled with "threats to an officer's safety, a criminal record reflecting violent tendencies, or a verified reputation of a suspect's violent nature").

{¶29} In the present matter, the officers faced a direct threat to their safety, given that they were in a dangerous situation involving a potentially violent individual with a firearm who refused to cooperate with police instructions. The officers had been called to the scene based on domestic violence allegations and were informed by Patience that she had been shoved to the ground by Pierre and prevented from calling

8

police. They were also aware that Pierre had informed dispatch that, when he came downstairs, the police "better be off his property," which could be perceived as a threat.

{¶30} In addition to these facts establishing a risk of confrontation, Pierre approached the glass door, where the officers were standing, holding a flashlight and a gun. Pierre was aware that the officers were outside from his conversations with dispatch. Given these circumstances, Pierre chose to shine a flashlight in the officers' faces and held a loaded gun while facing in their direction. He was repeatedly ordered to drop the weapon but did not immediately obey this direction. When he finally did say "okay," he performed a series of "manipulations" with the gun.

{¶31} Although Pierre did ultimately remove the magazine, place the gun on the table, and unlock the door, the officers had experienced a direct threat to their safety, as well as Patience's, and were unaware whether Pierre would go back to the table and pick up the gun or obtain another weapon. Given the events that had taken place, it was not unlikely that Pierre would act in a violent, dangerous, or aggressive manner.

{¶32} It is clear from Sergeant Eskridge's testimony that he reasonably believed such a danger existed which must be prevented through entry into the home. Immediately upon observing the gun, he pushed Patience off of the porch and drew his pistol. He ultimately found the threat to be great enough that he warned Pierre that if he did not drop the weapon, Eskridge "was going to kill him."

{¶33} In *State v. Burchett*, 2nd Dist. Montgomery No. 20167, 2004-Ohio-3101, under similar circumstances, the court held that exigent circumstances existed based on concerns for officer safety. In *Burchett*, the defendant answered his door while holding a gun pointed toward police. After seeing the officers, he pulled the gun back inside

9

and placed it on the floor, while police entered. The court held the following: "The officers were not required to retreat in the face of a threat with a firearm. They did not know how many other people or weapons were inside the apartment. Nor did they know whether Burchett was withdrawing from the doorway merely to find a better location from which to fire his weapon." *Id.* at ¶ 21. As noted above, the officers in this case faced a continuing threat of harm, based both on the facts that were known to them and the potential risk of Pierre's future conduct. This risk was heightened by Pierre's repeated exclamation of the phrase "Castle Law." This statement conveyed Pierre's position that he was entitled to use his weapon to defend himself from perceived intrusions to his home. It further justified the officers' belief that they were in imminent danger and that there was a legitimate risk that Pierre would use the weapon.

{¶34} Based on the foregoing, the trial court erred in holding that there were no articulable exigent circumstances for the warrantless entry into Pierre's home.

{¶35} The first assignment of error is with merit.

{¶36} In its second assignment of error, the State argues that the trial court erred by suppressing the firearms found in Pierre's home, since they were obtained by a search incident to a valid arrest and the items were in plain view.

{¶37} The search incident to arrest exception "allows officers to conduct a search that includes an arrestee's person and the area within the arrestee's immediate control." *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 11, citing *Chimel v. California*, 395 U.S. 752, 762-763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). This exception "derives from interests in officer safety and evidence

10

preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), citing *Chimel* at 763.

**{¶38}** Pierre first argues that the search incident to arrest exception does not apply because there was no valid arrest. It appears, however, that there was a basis to conduct an arrest for domestic violence. R.C. 2935.03 allows for warrantless arrests in certain domestic violence cases. *See* R.C. 2935.03(B)(3)(a)(ii) (an officer may arrest an individual without a warrant, when he, based on his "own knowledge and observation of the facts and circumstances [or] * * * any reasonably trustworthy information given to the peace officer by the alleged victim of the alleged incident of the offense * * *, concludes that there are reasonable grounds to believe that the offense of domestic violence * * * has been committed and reasonable cause to believe that the person in question is guilty of committing the offense"). Although Sergeant Eskridge initially noted that he did not plan on arresting Pierre for domestic violence, this does not mean that reasonable grounds to believe that Pierre committed the offense did not exist. Patience explained to police that she had been shoved to the ground multiple times, had been prevented from calling police, and had been locked out of the house by Pierre. The officers encountered Pierre acting in a threatening manner and with a weapon. This provided sufficient grounds to conduct an arrest. Moreover, although they did not have a warrant to enter the house, as noted above, they were allowed to enter based on the exigent circumstances of this case.

**{¶39}** In addition, the firearms were recovered while Pierre was still inside of the home. He was arrested in the same area where he had put down the gun, with the

other located in a nearby corner. Based on these facts, there is evidence to support that the guns were recovered during a valid search incident to arrest.

{¶40} The plain view doctrine also justified the seizure of the guns. Both were in plain view in the kitchen area, where the police were. "In order for evidence to be seized under the plain view exception to the search warrant requirement it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent to the seizing authorities." *State v. Williams*, 55 Ohio St.2d 82, 377 N.E.2d 1013 (1978), paragraph one of the syllabus. In this case, police were legally inside of the home and saw the weapons while effectuating the arrest of Pierre. Based on Pierre's brandishing of the weapon while facing police and the subsequent charges of unlawful possession of the weapons, the police were entitled to retrieve these items from the home.

{¶41} The second assignment of error is with merit.

{¶42} Based on the foregoing, the Judgment Entry of the Portage County Court of Common Pleas, granting Pierre's Motion to Suppress, is reversed and this cause is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.

CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

_____

12

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

{¶43} I concur with the well-reasoned opinion of the majority, but write separately to emphasize that the search in this case was conducted pursuant to valid consent. I strongly support the constitutional and fundamental right of citizens to be safe in their homes, and free from warrantless searches by the police. However, the power of the police to conduct warrantless searches pursuant to valid consent is longstanding.

{¶44} "'To establish the consent exception to the probable-cause and warrant requirements of the Federal and Ohio Constitutions, the state has the burden of establishing by "clear and positive" evidence that consent was freely and voluntarily given.' *State v. Lett,* 11th Dist. No. 2008-T-0116, 2009-Ohio-2796, ¶32, citing *Bumper v. North Carolina,* 391 U.S. 543, 548, * * * (1968) and *State v. Posey,* 40 Ohio St.3d 420, 427, * * * (1988). '"Clear and positive" evidence is the equivalent of clear and convincing evidence.' *State v. Jones,* 187 Ohio App.3d 478, 2010-Ohio-1600 (6th Dist.), ¶50, * * *, citing *State v. Danby,* 11 Ohio App.3d 38, 41, * * * (6th Dist.1983)."

{¶45} "'Whether a consent to search was voluntary * * * is a question of fact to be determined from the totality of the circumstances.' *Lett,* 2009-Ohio-2796, ¶32, citing *Schneckloth v. Bustamonte,* 412 U.S. [218] at 248-249 [(1973)] and *State v. Chapman*, 97 Ohio App.3d 687, 691, * * * (1994)." (Parallel citations omitted.) *State v. Starkey*, 11th Dist. Portage No. 2012-P-0038, 2012-Ohio-6219, ¶33-34.

{¶46} The totality of the circumstances in this case establish, by clear and positive evidence, that the search of the Mattocks' home was conducted pursuant to valid consent, given by Patience Mattocks. She had been locked out of the marital

home by her husband. She had every right to grant the police access to the home, and did so. The glass door was locked. Dispatch asked Mr. Mattocks to come to the door, so Mrs. Mattocks could retrieve belongings to stay elsewhere. He complied – but did so displaying a weapon. This indicated an apparent threat to the officers and Mrs. Mattocks, even when he placed the gun and its magazine on the table.

{¶47} I concur.